Vah Voorhis, J.
The decision involves the modification of a separation decree by granting custody to the father of a girl who was six years old at the time of the trial at Special Term and is ten years old today. During four years prior to this decision at Special Term rendered May 26, 1958 (11 Misc 2d 607, the order entered on which was affirmed by the Appellate Division, 10 A D 2d 935), custody of this child, named Heidi, was with the mother after the couple separated in 1954. The separation decree, entered in 1955, originally awarded custody to the mother, which was confirmed in her by another Special Term order entered in 1957 increasing the alimony and denying a cross motion by the father for a change of custody to him.
A second order of the Appellate Division is likewise here for review, affirming an order denying the mother’s application for a new custody hearing in the light of changed circumstances during the pendency of the appeals (17 Mise 2d 498 [June 30, 1959]).
The order directing the change in custody is challenged in this court mainly on the ground that Special Term erred as matter of law in considering the reports of a psychiatrist and of a psychologist concerning their examinations of the parties and their child, and in the refusal of Special Term to allow the *449 parties or their counsel to see these reports or the report of the investigation made by the family counsellor of the court. The latter officer, named Mrs. Sylvia L. Golomb, belongs to the Family Counselling Unit, an advisory arm of Special Term, Part XII, the Family Part of the Supreme Court, New York County, and was authorized by a written stipulation of the parties to make any relevant investigation and inquiry which the court might deem appropriate, including interviewing the parties and their child without further authorization from the attorneys, and this stipulation further provided: ‘1 That the Family Counsellor is authorized to report to the Court concerning the investigation and inquiry conducted pursuant hereto.” As originally drawn, this stipulation contained a clause authorizing the use of psychiatrists and psychologists, but by agreement of the attorneys it was deleted from the stipulation. This clause which was thus eliminated provided: “ That said Family Counsellor may use psychological, psychiatric and other medical assistance in her inquiry and may require the parties and the child of the parties to be examined by psychologists, psychiatrists or other professional medical personnel, without the further authorization of the attorneys for the parties. ’ ’ Under this stipulation, Mrs. Sylvia L. Golomb, the family counsellor of the court, was directed by the justice presiding at Special Term to make an impartial, out-of-court evaluation of the factors bearing on the custody of Heidi. She interviewed many persons having some knowledge of the living conditions of these people whose hearsay declarations are recorded in her report. In addition, as stated in the opinion by Special Term written at the conclusion of the custodial hearing (11 Mise 2d 607, 608-609): 1 ‘ In an endeavor to ascertain the best scientific and psychiatric information possible, this court availed itself of the services of a noted psychiatrist, a prominent psychologist and the court’s family counsellor. Careful investigation, study and interviews with all the principals, including the infant Heidi were initiated in the Spring of 1957. By agreement of counsel (May 23, 1957) and in accord with the underlying necessity therefor, such reports have been held confidential. They are available to the appellate courts in a review of the instant decision. These reports are, however, in complete agreement *450 and strongly urge that the welfare of the infant Heidi demands her removal from the household of the mother and that she be placed in an appropriate school for disturbed children.”
In considering this independent investigation by means of a psychiatrist and a psychologist, the Special Term Justice went ¡ beyond what had been agreed upon in the stipulation which, •wisely or not, declined to consent to psychological or psychiatric ‘examinations and reports. The stress which was placed by Special Term on all of these reports appears from its opinion of April 2,1958, adhering after reargument to its earlier interim order directing the placement of Heidi in an institution for disturbed children known as St. Christopher’s School at Dobbs Ferry, New York. In that opinion (N. Y. L. J., April 4, 1958, p. 5, col. 3) it was stated: “ The ample reports of the psychiatrists and the court’s family counsellor together with counsel’s stipulation rendered wholly unnecessary oral testimony. These confidential reports will be available to the Appellate Division on its review of the proceedings. The record should include the papers on this motion for reargument and this determination thereof. Permanent custody is not changed, but the infant’s welfare commands that the present school arrangements be carried out. Order signed.”
The appellant mother complains not only that she received no notice of the ex parte order transferring cusody to St. Christopher’s School, which is now academic since Heidi is no longer there, but also and mainly that the court made an investigation on its own through these psychiatric and psychological studies of the parents and Heidi, which the stipulation had refused to authorize, and kept these reports from the parties and their attorneys as well as the report of the court’s family counsellor, Mrs. Grolomb. Appellant mother avers that she or her lawyers were entitled to inspect these reports and to have opportunity to cross-examine the psychiatrist and psychologist, as well as the family counsellor and the persons whose hearsay declarations are recited in her report. We are satisfied that appellant sufficiently raised these questions and is entitled to be heard upon them in this court.
Regarding the secrecy with which these reports were handled, Special Term said that “By agreement of counsel (May 23, 1957) and in accord with the underlying necessity therefor, such *451 reports have been held confidential” (11 Mise 2d 608-609). The Appellate Division said: 1‘ Pursuant to stipulation of counsel these reports were held confidential and the contents thereof have not been revealed to the parties and their respective counsel.” (10 A D 2d 935.)
In construing the stipulation which has been mentioned above and to which these excerpts from these opinions referred, we consider that it lay within the power of the parties to stipulate that such reports could be made confidentially to the court, and that they did so in this instance respecting the investigation and report of the family counsellor, Mrs. Glolomb. It is true that the stipulation does not state in so many words that the report of the family counsellor need not be disclosed to the parties or their counsel, but that appears to be the effect of their consent that the family counsellor report to the court concerning her investigation and inquiry. In trying and deciding questions concerning the custody of young children, the parties frequently stipulate that the Trial Justice may interview the child in chambers, and obtain whatever impressions or information the child may give privately to him. What is said by the child to the Justice under such circumstances is necessarily secret unless the Justice chooses to disclose it, nor do we think that he is obliged to spread upon the record whatever the child has said as was held to be necessary where a zoning board views the locus in quo and makes a determination on the basis of its own independent investigation (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280). If parties to matrimonial disputes are competent to stipulate that there may be confidential interviews between the Justice and the child without disclosure of what is said by the child, there is little further difficulty in arriving at the conclusion that the parties can stipulate that the probation officer or the family counsellor attached to the court or other qualified and impartial persons may make investigations and report to the court with similar confidentiality. We do not hold with Herb v. Herb (8 A D 2d 419, 422) on this aspect of the case.
Our State courts have had occasion to consider certain aspects of these questions also in People ex rel. Fields v. Kaufmann (9 A D 2d 375, 377-378); People ex rel. Schlanger v. Schlanger (8 A D 2d 801); People ex rel. Kessler v. Cotter (285 App. Div. *452 206, 207); Gluckstern v. Gluckstern (2 A D 2d 744; 17 Misc 2d 83, affd. 3 A D 2d 999, affd. 4 N Y 2d 521). In disposing of the custody of children, courts are not so ‘1 limited that they may not depart from strict adversary concepts ” in certain respects. (People ex rel. Fields v. Kaufmcmn, supra, p. 377.) Custodial questions have sociological implications, and we are confronted here by a situation where common-law adversary proceedings and social jurisprudence are not entirely harmonious and where some reconciliation between them is necessary.
The parties did not have to stipulate that the report of the family counsellor, Mrs. Golomb, should be made to the court. The court could have directed Mrs. Golomb to make an investigation, to be sure, and then could have left her testimony to the parties to deal with under common-law rules in the absence of their consent. Even without their consent the report might have been used to furnish leads for the introduction of common-law evidence as was sanctioned in Gluckstern v. Gluckstern (supra). Nor is there any reason which would prevent the court in the proper exercise of a judicial discretion from calling upon qualified and impartial psychiatrists, psychologists or other professional medical personnel, preferably under the auspices of the probation officer or family counselling unit connected with the court, to examine the infant or to examine the parents also if they will submit to such examination. In such case the psychologists, psychiatrists or other medical personnel could not report to the court in the absence of stipulation by the parties but would be available to be called as witnesses by either party subject to cross-examination by the other party under common-law evidence rules. No question is before this court concerning how such professional aid should be compensated, nor is it indicated that in the absence of consent the parties could be compelled to pay for their services. The following statement was made in the case of Rea v. Rea by the Supreme Court of Oregon (195 Ore. 252, 277-278): “ The trial court cannot delegate to anyone the power to decide questions of child custody. All parties to the controversy have a right to present competent evidence in open court. When the court, in the absence of any stipulation, and in the face of timely objection, makes an independent investigation concerning child custody, it commits error. Its action, however, is not void for *453 want of jurisdiction. The better-reasoned modern cases tend to support the view that when an independent investigation is made by the court, or a private conversation is had with an infant whose custody is in issue, or when investigation is authorized and made by a member of the staff of the court, such action, being pursuant to stipulation of the parties or being acquiesced in by the parties, the consideration by the court of such investigation will not constitute reversible error even though the report is not incorporated in the record.”
Other States have held substantially to the same effect. A judgment awarding custody of a minor child was vacated in Matter of Gupton (238 N. C. 303) where the decision had been made largely on the basis of undisclosed information as to the private and home life of the parties gathered by the presiding justice on his own motion through the instrumentality of an unidentified officer of the law without the knowledge of the" parties in the absence of stipulation. In Fewell v. Fewell (23 Cal. 2d 431) investigators of domestic relations cases, operating as adjuncts of the State judicial system, were held to be incapable of being invested with power to decide custodial questions, even though they were attaches of the court. There it was held to be without their province to make private factual reports of recommendations to the judge or any recommendations independently of the evidence on which they are based. Such investigators were likewise held to be obliged to appear like other witnesses at the demand of any party, and to be obliged to testify subject to the rules of evidence and the right of cross-examination. Tumbleson v. Tumbleson (117 Ind. App. 455) held likewise in the absence of a stipulation that it was reversible error for the court to receive the report of an invests gation conducted by its probation department since it denied the right of trial involving confrontation by and cross-examination of adverse witnesses.
Upon the other hand, where the defeated parent had consented to an order directing the State Department of Public Welfare to make an investigation and report to aid the court in its determination of the custody of minor children of the parties, it was held in Onderdonk v. Onderdonk (3 Wis. 2d 279) that it was not reversible error for the court to have based its findings of fitness on such report. Likewise in Crawford v. Crawford *454 (256 S. W. 2d 875 [Tex. Civ. App., 1952]) the decision of the trial court was affirmed in a child custody suit on its finding that the report of an investigator was made and filed with the knowledge and consent of the parties for the purpose of aiding the court in determining what was best for the child. In Luman v. Luman (231 S. W. 2d 555 [Tex. Civ. App.]) a finding by the trial court was accepted as controlling that the report of the county welfare unit regarding the fitness of the respective parents was made and filed with the court by the consent of both husband and wife. In Lawrence v. Hosfield (51 Wn. [2d] 157) it was held that extrajudicial welfare reports on home conditions of the parties have no place in adversary proceedings for modification of child custody provisions of a divorce decree, except by agreement of the parties, but nevertheless the order was affirmed on the basis that the appellant had acquiesced in the receipt and consideration by the trial court of these reports, thereby waiving any right to a claim of error in the reception thereof.
Where, as here, a stipulation was made regarding the report of the family counsellor attached to the court, but not regarding the psychiatrist or psychologist, we consider, as above stated, that the court was authorized under the stipulation to consider the report of the family counsellor, even though the attorneys for the parties did not see it, just as it would have been competent for both sides to have stipulated that the Special Term Justice might interview the child in chambers and obtain whatever impressions or information might be imparted from such an interview. We believe that to have been the purport of the stipulation that the family counsellor should report to the court concerning the investigation and inquiry consented to be conducted by her without further authorization of the attorneys. They consented, in effect, that it should be dealt with by analogy to the use which is made in a criminal case of a probation report in imposing sentence. Were it otherwise, unnecessary technical issues would constantly present themselves where parties have stipulated in trials of this nature, that the court may make an investigation of its own directly or through the instrumentality of probation officers, family counsellors, welfare agencies and the like. The natural purport of such stipulations, unless they state otherwise, is that the *455 common-law rules of evidence are suspended pro tanto in adapting to the social nature of the problem to be solved. In a case like the present, where this matrimonial dispute and custodial question were widely publicized in the newspapers, it may well be that the parties preferred a procedure of that sort to curtail somewhat the publicization of the intimacies of their lives.
The situation is otherwise, however, respecting the reports by the psychiatrist and psychologist. The stipulation which has been quoted specified that the person authorized to investigate and report to the court was “ the Family Counsellor of this Court, Mrs. Sylvia L. G-olomb ”. The parties refused to stipulate that she might use psychological, psychiatric and other medical assistance in her inquiry. Under our interpretation of the law, that did not prevent the Trial Justice from ordering a psychological and psychiatric inquiry (provided that arrangements were made concerning the expense) but, after they had been made, the reports of the psychiatrist and of the psychologist had to be dealt with under common-law rules since they were not covered by the stipulation. Either party could have called those expert witnesses, in that event, whose views regarding the parties and the custody of Heidi would then have become known immediately to the opposite side with opportunity of cross-examination. We do not go so far as to hold that the parties could not stipulate that such reports could be made confidentially to the court, but the fact is here that they did not so stipulate and expressly refused to do so. Therefore, the Special Term Justice erred in keeping confidential the reports of the psychiatrist and psychologist, and in considering them at all.
It may well be that the determination of a special term justice based on confidential reports under stipulation cannot, under certain circumstances, be reviewed on appeal. That consequence appears to have been accepted by the Supreme Court in Oregon in Rea v. Rea (supra) where it was considered in the majority opinion. The right to appeal is not part of due process, as the Supreme Court of Oregon said; parties to litigations can stipulate to waive the right to appeal, and we find no obstacle to giving effect to such stipulations notwithstanding that they may in some instances limit the right of appeal.
*456 These views vary somewhat from the expression in this case by the Appellate Division’s memorandum, where it was said: “ In commenting upon the use of such reports we said in People ex rel. Fields v. Kaufmann (9 A D 2d 375, 378): ‘ reports of | experts are * * * aids to the court in custody matters i * * * . What must be borne in mind, however, is that they i are only aids and, if not woven into the fabric of the record, ¡should not form a base for the decision.’ (See, also, People ex rel. Schlanger v. Schlanger, 8 A D 2d 801; Herb v. Herb, 8 A D 2d 419.) If such reports should be taken into consideration by the trial court, of course, they must be made available ¡to counsel. In this case it appears, however, that extended hearings were conducted herein and the court’s decision is based, in the major part, upon the testimony and documentary evidence there adduced. Disregarding the confidential reports of the experts as the court below should have done inasmuch as they were not made part of the record, we still find in the record ample evidence to sustain the determination awarding custody of the child to the respondent with limited privilege of visitation to the appellant. Order of June 30, 1959 unanimously affirmed, without costs.”
This statement is erroneous in several respects. First, as has been said, if the parties so stipulated (as they did here in regard to Mrs. G-olomb’s report) there is no more reason why they had to be disclosed to counsel for the parties than would be necessary if they stipulated that the Trial Justice might interview the child in chambers, or in the case of a probation report which need not be submitted to the defendant’s counsel when sentence is imposed in a criminal case. Even the right of a public trial may be waived under some circumstances (People v. Miller, 257 N. Y. 54, 60-61; Matter of United Press Assns. v. Valente, 308 N. Y. 71, 84). Neither do we think that the report needs to be part of the record where such a stipulation has been made. (See “ Use of Extra-Record Information in Custody Cases,” 24 U. of Chi. L. Rev. [1956-1957], pp. 349-361.) If stipulation were not entered into, it could not be admitted into evidence or examined by the court without consent of the parties.
The Appellate Division could hardly disregard these reports “ as the court below should have done ” and proceed to decide the case on the basis of different factors from those which the *457 trial court had before it. Concerning that the Oregon Supreme Court observed pointedly in Rea v. Rea {supra, p. 262): “ This general principle appears to be applicable here. Technically, the 1 evidence ’ received in court appears in the record. Actually the record does not disclose the factual basis of the trial court’s decision. For this court to retry the case on the ‘ evidence ’ alone would be to try a different case from that decided by the trial court. This we are not required to do.”
Expressed somewhat differently, it was the trial court that saw and heard the witnesses, the parties and the child and was deeply versed in the reports of the family counsellor, the psychiatrist and the psychologist. These last were sufficient, in the Trial Justice’s own words, without oral evidence, to warrant taking away the child from the mother and placing her at St. Christopher’s institution at Dobbs Ferry. It was impossible for the Trial Justice later to eradicate from his mind the important factors—supplied by these reports. Moreover, not only did he state in his opinion after deciding the question of custody following the hearing (11 Misc 2d 607) that he had considered them, but he observed that they would be available to the appellate courts in a review of his decision (p. 609).
The orders of the Appellate Division should be reversed, we think, and the matter remanded to Special Term for a hearing de novo, at which the facts may be considered as of the present time after the child has been with the father about three years. One of the orders under review, it will be recalled, asked for a trial of custody de novo at the instance of the mother, and this was denied, as the opinion of Special Term shows (17 Mise 2d 498), mainly on the basis of a letter written to the justice presiding by an associate of Dr. Kesseler on the staff of the Lenox Hill Hospital, which was not exhibited to counsel for the wife nor its existence disclosed until after the decision. This is a two and one-half page, single-spaced typewritten letter, stating that Heidi had been under intensive psychiatric treatment by the author of the letter, that she is a seriously disturbed girl whose treatment has been made more difficult by her mother’s attitude, and concludes that the mother’s visitation should be limited to once per month so that her bad effect on Heidi can be minimized. No stipulation had been entered into concerning this letter. It was not brought to the attention of *458 plaintiff or her counsel until they read about it in the Special Term opinion. The author of it was not even an ¿ppointee or attaehé of the court, but was a colleague of Dr. Kesseler’s on the staff at the Lenox Hill Hospital. It is quite clear that it should not have been received nor have entered into the decision.
The conclusion of this analysis is that the stipulation was broad enough to render the report of Mrs. Golomb, the family unit counsellor attached to the court, confidential to the court so that its disclosure to counsel was not required by due process, that the circumstance that it was used by the trial court does not vitiate its decision but that the reports of the psychiatrist and psychologist did not come within the stipulation and it was, therefore, error for him to have considered them. In fact, without any stipulation, either party was free to raise the question of their examination by the court. In this instance, review on appeal is not precluded on account of the confidential report of the family counsellor, or the reports of the psychiatrist and psychologist, inasmuch as they have been identified and are before the appellate courts and may be considered in conjunction with the evidence. The Appellate Division erred, we think, in excluding from its consideration all of these reports, and by doing so decided a different case, in important respects, from that which was before the Trial Justice. The reversal depends not upon the circumstance that the Trial Justice utilized Mrs. Golomb’s report, but that he utilized the reports of the psychiatrist and the psychologist that were not included in the stipulation and also the report of the attending psychiatrist at Lenox Hill Hospital in denying the application for a custodial hearing de novo. It is appropriate that there should be a hearing de novo both in view of the circumstance that three years have elapsed while Heidi has been in the custody of her father, and that the fact mentioned by the Special Term Justice did not come to pass that Dr. Kesseler’s mother and aunt would be living with him and caring for Heidi. Instead he purported to marry again after obtaining a Mexican divorce from Mrs. Kesseler, and the child is now living with Dr. Kesseler and his new consort who are cohabiting as husband and wife. We do not intimate that this should necessarily preclude the awarding of custody to Dr. Kesseler, but it is a factor which has occurred *459 since the decisions appealed from and goes counter to their rationale in certain respects.
It is pertinent to observe that the record indicates that the Trial Justice was clearly endeavoring to decide this question of custody according to what he considered to be for the best interest of Heidi. Nevertheless, in the context in which the case comes to our court, we are persuaded that the orders cannot be affirmed for the reasons stated.
The order appealed from should be reversed and a hearing directed de novo.