Sam J. GRANATO, Director, Division of Social Services, Dept. of Health and Social Services, State of Alaska, Appellant,

v.

The Honorable C. J. OCCHIPINTI, Judge of the Superior Court, Third Judicial District, State of Alaska, Appellee.

No. 3756.

Supreme Court of Alaska.

Nov. 9, 1979.

Thomas H. Robertson, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Max F. Gruenberg, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and DIMOND, Senior Justice.

OPINION

MATTHEWS, Justice.

This appeal is taken from a judgment declaring that the superior court has the authority to order the Alaska Department of Health and Social Services, Division of Social Services, against its will, to conduct a home-study in a private custody dispute. We reverse.

The facts are not in dispute. Judge Occhipinti signed an order directing the Divi-

sion of Social Services [1] to investigate the suitability of placing the parties' minor children with their mother in Anchorage. The order also directed the division to request that the appropriate Arkansas agency conduct a similar study of the father's parents' home in Arkansas. The state was not a party to the custody proceeding and received no prior notice that the foregoing order was contemplated. The Attorney General's office informed the court that it had directed the Division of Social Services not to comply with the order, and then moved to quash it. A hearing to show cause and to argue the motion to quash was scheduled, but before it could be held the divorcing parties reconciled and the lawsuit was dismissed. Because the dispute surrounding the validity of the court's order was a continuing one, and likely to recur frequently in the future, the motion to quash was treated, by stipulation of the parties, as a complaint for a declaratory judgment.[2]

The single issue properly before us is whether the superior court could constitutionally require the state to perform a home-study.[3] The Division of Social Services is a specialized unit within the Department of Health and Social Services, which department has been designated by AS 44.-15.010 as a "principal" department in the state government.[4] Article III, section 22, of the Alaska Constitution,[5] declares that the "functions, powers, and duties" of such a "principal" department shall be allocated "by law", a term that article XII, section 11, explicitly defines as meaning "by the legislature."[6] In addition, article III, section 23, permits the governor to "make changes . . . in the assignment of functions among . . . [the] units [of the executive branch] which he considers necessary for efficient administration."[7] The legislature may disapprove the governor's reallocation of functions. *Id.* The constitution vests no power in the judiciary

1. Formerly the Division of Family and Children's Services.

2. AS 22.10.020(b) provides in pertinent part:
   In case of an actual controversy within the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought.
   *See Alaska Pub. Util. Com'n v. Munic. of Anchorage*, 555 P.2d 262, 264 n. 1 (Alaska 1976); *Jefferson v. Asplund*, 458 P.2d 995, 999 (Alaska 1969). *See also Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1036 (Alaska 1972).

3. The state's position is that the Division of Social Services is willing to cooperate with the courts and perform home studies in private litigation when requested, "subject to the constraints of available resources." The state, however, challenges the power of the superior court to "order these social workers to lay aside their normal duties and study the homes of private litigants."

4. AS 44.15.010(6) provides in pertinent part:
   *Offices and departments.* There are in the state government the following principal offices and departments:
   (6) Department of Health and Social Services.

5. Article III, section 22 provides:
   *Executive Branch.* All executive and administrative offices, departments, and agen-

cies of the state government and their respective functions, powers, and duties shall be allocated by law among and within not more than twenty principal departments, so as to group them as far as practicable according to major purposes. Regulatory, quasi-judicial, and temporary agencies may be established by law and need not be allocated within a principal department.

6. Article XII, section 11 provides in part:
   *Law-Making Power.* As used in this constitution, the terms "by law" and "by the legislature," or variations of these terms, are used interchangeably when related to law-making powers.
   *See Warren v. Boucher*, 543 P.2d 731, 733 (Alaska 1975).

7. Article III, section 23 provides:
   *Reorganization.* The governor may make changes in the organization of the executive branch or in the assignment of functions among its units which he considers necessary for efficient administration. Where these changes require the force of law, they shall be set forth in executive orders. The legislature shall have sixty days of a regular session, or a full session if of shorter duration, to disapprove these executive orders. Unless disapproved by resolution concurred in by a majority of the members in joint session, these orders become effective at a date thereafter to be designated by the governor.

to define the specific functions of these agencies, and in the absence of express authorization or an overriding constitutional imperative, the judiciary may not bequeath such a power to itself.[8]

■ By the mandate of article III, section 22, the state legislature is without doubt empowered to direct the Department of Health and Social Services to assist a trial court in gathering information necessary to the court's intelligent fulfillment of its duties. Thus the legislature has commanded the department to investigate a child's background and the suitability of his or her prospective home, when the department is appointed to do so by a court presiding over an adoption proceeding;[9] has commanded the Commissioner of Health and Social Services to "make available to the superior court, where necessary, quali-

fied probation officers and assistants;"[10] and, with respect to delinquent minors, has commanded the department to "submit a predisposition report with a recommended plan of treatment to aid the court in its selection of a disposition, and any further information which the court may request."[11] The foregoing statutes address the department directly and by name.[12]

■ By contrast, the sole legislative directive relevant to the order given in the instant case states only that in a private custody dispute the court may order that "services be provided for the protection of the child." AS 09.65.130(a) and (c).[13] There is no implied grant of power to compel the performance of these "other services" by a state agency not wishing to perform them. Moreover, by providing that the costs of such services will be assessed

---

**8.** *Cf. Bradner v. Hammond*, 553 P.2d 1, 7 (Alaska 1976) (the constitution, by expressly delegating to the legislature the power to confirm the appointment of certain executive officials, must be read as precluding such a confirmation power with respect to other officials); *Public Defender Agency v. Superior Court, Third Judicial District*, 534 P.2d 947, 950 (Alaska 1975) (superior court violated separation of powers by commanding Attorney General to prosecute child-support case). *See also Bingler v. Johnson*, 394 U.S. 741, 750–51, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695, 704 (1969) (court will not direct I.R.S. how to administer tax laws); *Velasco v. Immigration And Naturalization Serv.*, 386 F.2d 283, 287 (7th Cir. 1967), *cert. denied*, 393 U.S. 867, 89 S.Ct. 153, 21 L.Ed.2d 136 (1968) (court would not lay down standards for H.E.W. to follow in administering statute); *Associated Builders & Contractors v. United States Dep't. of Energy*, 451 F.Supp. 281, 285 (S.D.Tex.1978) (court can require Department of Labor to conform to its own rules, but cannot rewrite rules); *Desert Environment Conservation Ass'n v. Public Util. Comm'n.*, 8 Cal.3d 739, 106 Cal. Rptr. 31, 33, 505 P.2d 223, 225 (1972) (court may not compel agency to adopt particular procedures in preparing environmental impact report).

**9.** AS 20.15.100(d) provides in pertinent part: [A]n investigation shall be made by the department or any other qualified agency or person designated by the court to inquire into the conditions and antecedents of a minor sought to be adopted and of the petitioner for the purpose of ascertaining whether the adoptive home is a suitable home for the minor and whether the proposed adoption is in the best interest of the minor.

AS 20.15.200 provides:
Persons who are caring for a hard-to-place child on a foster parent basis and who have applied to adopt the hard-to-place child and to receive payments for the care and support of the hard-to-place child shall be evaluated as to their suitability as adoptive parents by means of an adoptive home study. This home study shall be made by the commissioner's adoption staff or on his behalf by an authorized agency which provides adoption services.
The respective references are to the Department and Commissioner of Health and Social Services. AS 20.15.240(4) and (6).

**10.** AS 33.05.020(a).

**11.** AS 47.10.081(a).

**12.** *See also* AS 47.17.030(a), which provides that upon receipt of a report of child abuse "the department shall . . . investigate and take action, in accordance with law, which may be necessary to prevent further harm to the child or to insure the proper care and protection of the child," and AS 47.05.010, in which the legislature has delineated the general duties of the department.

**13.** AS 09.65.130(a) and (c) state that when divorcing parents notify the court that custody is at issue, the court may appoint an attorney and/or a guardian ad litem to represent the child, and "may further order that other services be provided for the protection of the child."

against the parties, and that the court may advance such costs to parties temporarily without funds, AS 09.65.130(b) suggests that it is contemplated that such services typically are to be performed by a private agency. Since in other statutes the legislature has seen fit to exercise its article III, section 22 authority over the department expressly, an implied exercise of that power will not easily be found in language that is directed only to the judiciary and uses no term even vaguely indicating an intent to make the department's resources available to the courts.

■ The appellee maintains that AS 47.-10.020(a) authorizes a court to order the department to conduct a home-study investigation in a public custody proceeding, without referring to the department directly, and argues that a similar construction should be placed on AS 09.65.130(a) and (c). The pertinent language in AS 47.10.020(a) provides:

> Whenever a person informs the court of the facts which bring a minor within this chapter, the court shall appoint a competent person or agency to make a preliminary inquiry and report for the information of the court to determine whether the interests of the public or of the minor require that further action be taken.

There is no analogy between this section and AS 09.65.130. Unlike the language of AS 09.65.130, the phrase "competent agency" is at least suggestive of the legislature's intent to include the department in the statute's scope. Chapter 10 of Title 47 is concerned with two distinct categories of children: delinquent minors, and children in need of aid, and in each case the state is directly concerned as a party to the litigation.[14] Thus while the paramount concern in both private and public custody proceed-

ings is the best interest of the children involved,[15] the department is integrally a part of the latter proceedings and a likely agency for the legislature to regard as subject to appointment to conduct a home-study. The department has no role in a private custody proceeding unless information surfaces there triggering the state's involvement pursuant to AS 47.10.010. Finally, as noted *supra*, AS 47.10.081(a) directs the department to conduct predisposition hearing reports regarding delinquent minors. Since the reports to be done pursuant to AS 47.10.010(a) include reports pertaining to delinquent children, the specific designation of the department in subsection .081(a) is highly probative of the meaning of "competent agency" in subsection .020(a). In conclusion, AS 47.10.020(a) does not support the inference that the vague directive of AS 09.65.130 empowers a court to command the aid of the Department of Health and Social Services in a private custody dispute.

■ Finally, the appellee argues that since the judiciary's obligation to provide for the best interests of the children whose custody it must decide exists independent of statute,[16] the means utilized by a court to fulfill that obligation are not limited to those specifically authorized by statute.[17] While this argument has merit with regard to the inherent authority of a court to see to it that a home-study is performed, it is not readily adaptable to the proposition that a court may compel a state agency to perform such a study contrary to its desires. Since there is no contention here that to adequately protect a child's interests a court must impinge on the constitution's deliberate, clear, and exclusive grant of power to the legislature and governor to designate the functions of executive agencies, we discern no basis for implying the extraordinary judicial power suggested.

REVERSED.

---

14. *Flores v. Flores*, 598 P.2d 893 at 897 (Alaska 1979).

15. *See* AS 09.55.205 (private custody proceedings); AS 47.10.082 (public custody proceedings).

16. *Public Defender Agency v. Superior Court, Third Judicial District*, 534 P.2d 947, 949 n. 2 (Alaska 1975).

17. *See Thomas v. State*, 566 P.2d 630, 637–38 (Alaska 1977); *Continental Insurance Cos. v. Bayless & Roberts, Inc.*, 548 P.2d 398, 410 (Alaska 1976).

BOOCHEVER, J., dissents, with whom RABINOWITZ, C. J., joins.

BURKE, J., not participating.

BOOCHEVER, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting.

I do not believe that the court should address the delicate issues presented by this appeal involving the relationship between the judiciary and executive branches of government. First, I do not believe that the dispute is ripe for our consideration. The actual dispute between the initial parties has been settled and is moot. While the issue is of considerable importance and might escape review, it comes before us in the posture of a declaratory judgment action, without any evidentiary hearing developing relevant facts. The majority concedes that the judiciary has inherent authority to see that a home study is performed, and it apparently also recognizes that the court has statutory authority to order such studies. Apparently, the majority believes that there are other resources than those of the Department of Health and Social Services (hereinafter, the Department) which may be called upon to perform such studies. I doubt that such other resources exist in most areas of Alaska, but in the absence of an evidentiary hearing, no conclusions can be reached on this important issue. Certainly, if the only available means for securing such studies is through the Department, the legislature in authorizing home studies must have intended they be performed by the Department.

Secondly, I am disturbed by the fact that no request was made of the Department prior to issuance of an order, although the Department has indicated that it is "willing to cooperate with the courts and, subject to the constraints of available resources, supply home studies when requested to do so."

Before reaching the merits of an issue such as this involving the relationship between the different branches of state government, I would require that a request be made of the Department to perform the studies. Only upon a refusal of such a request, do I believe that it would be necessary for the court to issue an order and thus raise the issues here presented.

Since the majority has addressed the issues, however, and since I respectfully differ from its conclusions, I find it necessary to set forth my views on the merits.

Analysis of the issues in this case indicates that it is not disputed that the courts have the power to order home studies in private custody cases. Statutory authority either direct or implied may be found in a number of statutes. AS 09.55.205 provides in part that in actions for divorce or legal separation, the court may enter any "order for the custody of or visitation with the minor child which may seem necessary or proper . . . . The court shall determine custody in accordance with the best interests of the child."

Under AS 09.65.130, the court is requested to "determine whether the child should have legal representation or other services," and the court "may further order other services be provided for the protection of the child." Under AS 22.10.020, the superior court may issue "all . . . writs necessary or proper to the complete exercise of its jurisdiction." As the Department concedes, in its brief, there can be no question that ordering home studies falls within the broad scope of such statutory authority.

Even in the absence of such authority where a court has jurisdiction to determine custody matters, it may order home studies in the exercise of its inherent equitable authority.[1]

1. *Tumbleson v. Tumbleson*, 117 Ind.App. 455, 73 N.E.2d 59 (1947); *Benjamin v. Benjamin*, 370 S.W.2d 639 (Mo.App.1963); *Martinez v. Martinez*, 49 N.M. 405, 165 P.2d 125 (1946); *Kumbartzki v. Kumbartzki*, 38 A.D.2d 824, 329 N.Y.S.2d 156 (1972); *Kessler v. Kessler*, 10 N.Y.2d 445, 225 N.Y.S.2d 1, 180 N.E.2d 402 (1962). In *Boone v. Boone*, 80 U.S.App.D.C.

152, 156, 150 F.2d 153, 157 (D.C. Cir. 1945), the court stated:

We think that, for this purpose, in a custody case of the present character, the court, if possible, should call to its aid experienced and disinterested persons, such as its probation officers or the trained social workers in the Board of Public Welfare, to make an

There also appears to be no question but that the Department has statutory authority broad enough for it to provide such home studies in cases involving the welfare of children in private litigation. The Department, in effect, concedes such authorization by stating that it "is willing to cooperate with the courts and, subject to the constraints of available resources, supply home studies when requested to do so." The Department is required to administer laws relating to the improvement of child health. AS 18.05.010. This authorization would seem broad enough to include home investigations when issues so important to a child's physical and mental health as the child's custody and future care are involved.

There is clear express authority for the Department to make such investigations in adoption procedures [2] and in proceedings involving delinquent children or children in need of supervision.[3]

In 1977, the legislature adopted the Uniform Child Custody Jurisdiction Act applicable in private custody disputes. AS 25.-30.180(a) authorizes the superior court to request the court of another state to have social studies made with respect to the custody of a child involved in proceedings pending in the court of this state. AS 25.30.190(a) provides that, upon request of a court of another state, the superior court may order social studies to be made for use of custody proceedings in another state. It

seems clear to me that the legislature, in providing that the court may order social studies, intended that the state agency with the necessary expertise and general authority for making those studies, be subject to those orders.

I cannot believe that the legislature intended that such studies may be made at the request of out-of-state courts, but not at the initiation of Alaska courts in domestic custody disputes. In fact, it seems to me that such an interpretation of our laws involves a discrimination against Alaskan children of like circumstances dependent on the jurisdiction where the child custody dispute arises, in violation of Alaska's constitutional equal protection provision, article I, section 1 of the Constitution of the State of Alaska. In other words, one child is entitled to the benefits of the social studies if the request comes from another state, while another child undergoing the same living accommodations and care, is not entitled to studies by the state agency with the necessary expertise because the order originates from the Alaska court. I do not think, however, that it is necessary to reach the constitutional issue, since our statutes should not be construed to reach such an incongruous result.

I believe when Alaska's statutes are considered in pari materia that it is abundantly clear that the superior court is empowered to order home studies in private child custo-

unbiased examination of the qualifications of these parents and of the circumstances which surround these children. We realize that the suggested procedure is new and one which the Court may very properly have hesitated to initiate on its own motion. But it is in line with well-recognized procedures in other cases in which the court acts as parens patriae. [footnote omitted]

2. AS 20.15.100(d) specifies:
Except as provided in (g) and (i) of this section, an investigation shall be made by the department or any other qualified agency or person designated by the court to inquire into the conditions and antecedents of a minor sought to be adopted and of the petitioner for the purpose of ascertaining whether the adoptive home is a suitable home for the minor and whether the proposed adoption is in the best interest of the minor.
See also AS 20.15.200.

3. AS 47.10.020(a) provides:
Whenever a person informs the court of the facts which bring a minor within this chapter, the court shall appoint a competent person or agency to make a preliminary inquiry and report for the information of the court to determine whether the interests of the public or of the minor require that further action be taken. Upon the receipt of the report, the court may informally adjust or dispose of the matter without a hearing, or it may authorize the person having knowledge of the facts of the case to file with the court a petition setting out the facts. Where the court informally adjusts or disposes of the matter, the minor may not be detained or taken into the custody of the court, and the matter shall be closed by the court upon adjustment or disposition.

dy disputes, and that the Department is authorized to perform those studies.[4]

---

4. The majority refuse to require that costs of the services be assessed against the parties as a reason for believing the legislature did not intend the services be performed by the Department. There is no reason why the Department may not present to the court its statement for services rendered. The court may then assess those costs against the parties.