**KELVIN DENNIE, Appellant/Plaintiff**
**v.**
**ARLENE SWANSTON, Appellee/Defendant**

S. Ct. Civ. No. 2008-016
Supreme Court of the Virgin Islands
February 18, 2009

BEVERLY A. EDNEY, ESQ., Rincon, Puerto Rico, *Attorney for Appellant.*

WILLIAM W. FRANKS, ESQ., Legal Services of the Virgin Islands, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 18, 2009)

PER CURIAM. Kelvin Dennie ("Dennie") and Arlene Swanston ("Swanston") are the father and mother of a son, Israel, who was born in 1995. Dennie and Swanston have been engaged in an ongoing dispute over the custody of Israel, and, in the instant action, Dennie petitioned the trial court to modify the child custody provisions of a consent decree he agreed to with Swanston. Following an evidentiary hearing, the trial court denied the petition. Dennie moved for reconsideration, arguing among other points, that the trial court erred at the hearing in admitting a report from the Department of Human Services ("DHS") because he was not given a copy of the report prior to the hearing and because the preparer of the report was not available for cross-examination at the hearing. The trial court denied Dennie's motion for reconsideration, and this appeal ensued. Because we agree with Dennie that the trial court abused its discretion in denying his motion for reconsideration, the court's decision will be reversed and the matter remanded for a new hearing.

## I. FACTS AND PROCEDURAL BACKGROUND

The record shows that Dennie and Swanston have been disputing Israel's custody since at least 2000, which is when the trial court awarded physical custody of Israel to Swanston and provided visitation rights to Dennie. In December of 2000, Swanston moved to New Jersey and left Israel to live with Dennie. Shortly after Swanston returned to the Virgin Islands in September of 2006, Israel resumed living with her. In January of 2007, Dennie petitioned the trial court to modify his custody rights. That petition resulted in a consent decree, entered by the court on September 24, 2007, under which the parties agreed that Swanston would retain physical custody of Israel and Dennie would have visitation rights.

On November 6, 2007, Dennie filed the instant petition, again seeking a change of custody. While this petition was pending, Israel, then twelve years old, ran away from Swanston's home to live with Dennie.

Following an emergency hearing to address the matter, the trial court gave temporary, physical custody of Israel to Dennie over the Christmas holidays and ordered DHS to investigate the reasons why Israel did not want to live with Swanston. The court further ordered DHS to report its findings by January 18, 2008, and scheduled a final hearing on Dennie's petition to modify custody for February 5, 2006.

DHS submitted its report to the court one day before the hearing. The report reveals that Israel left Swanston's home following a dispute he had with Swanston. After recounting the details of the dispute, as reported by Israel and Swanston, the caseworker concluded that Israel was essentially trying to manipulate his parents "to see how he can use both parents for his own needs." (App. at 31.) The caseworker concluded that she did "not see a problem within the family structure and would recommend that Israel continue in the physical custody of his mother, []Swanston." (App. at 31.) In addition to providing the report to the trial court, the report indicates that copies were sent to Swanston's attorney and a guardian ad litem appointed by the court to represent Israel's interest. However, it does not appear that DHS sent the report to Dennie.

At the final hearing, Dennie represented himself, Swanston was represented by her attorney, and Israel's interests were represented by the guardian ad litem. When the hearing commenced, the trial judge commented that, based on the report, she did not see any problem with returning physical custody of Israel to Swanston. Dennie responded: "I do have an objection to that judge." (Hr'g Tr. 3, Feb. 5, 2008.) Dennie was then sworn as a witness, and the judge asked him whether he had an opportunity to review the DHS report. Dennie told the judge that he had "just looked at it" and had "some questions about it." (Hr'g Tr. 4.) However, Dennie did not elaborate on his earlier objection or his questions about the report. Rather, in what amounted to an informal colloquy between Dennie and the trial judge, Dennie proceeded to discuss his view that there had been a substantial change in circumstances affecting Israel's custody. Following this colloquy, the trial court elicited brief, unsworn statements from Swanston's attorney and the guardian ad litem. The trial judge then concluded, without stating any findings of fact, that "there has been no continuing and substantial change of circumstances to the point where the best interest of the child requires a change in custody." (Hr'g Tr. 15-16.)

166

Thereafter, Dennie retained an attorney and moved for reconsideration of the trial court's order denying his petition to modify custody. In his motion, Dennie asserted, among other arguments, that the trial court erred in relying on the DHS report because he was provided with a copy of the report only five minutes before the hearing and because the caseworker who prepared the report was not available for cross-examination at the hearing. Dennie argued that under these circumstances he was denied due process and was, therefore, entitled to a new custody hearing. The trial court denied Dennie's motion, and he filed the instant appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests the Supreme Court with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court . . . ." On appeal, we review the trial court's denial of Dennie's motion for reconsideration for an abuse of discretion, "except to the extent that the ruling was based on an interpretation and application of a legal precept, in which case our review is plenary." *In re Adoption of Sherman*, 49 V.I. 452, 456 (V.I. 2008).

## III. DISCUSSION

Although Dennie, represented by counsel on appeal, raises several assertions of error in his brief, he has not correlated the issues stated in his statement of issues with the arguments he raises in the body of his brief, which is a violation of Supreme Court Rule 22(a)(5). As best we can discern, Dennie contends that the trial court erred in: (1) failing to make findings of fact as required by Rule 52(a) of the Federal Rules of Civil Procedure; (2) denying his motion for reconsideration without a hearing on the motion; (3) relying solely on the DHS report in rendering its decision; (4) relying on the DHS report when he was only given a copy of the report at the hearing and was not afforded an opportunity to cross-examine the case worker; and (5) failing to provide him a fair and impartial custody hearing. Because we conclude that the trial court's judgment must be reversed and the matter remanded for a new hearing based on the fourth enumerated error, *i.e.* that Dennie should have been

given prior notice of the DHS report and an opportunity to cross-examine its preparer, it will be unnecessary to address the other asserted errors.[1]

## A. Dennie's Due Process Arguments Are Properly Before The Court

 Before discussing the merits of Dennie's assertion that the trial court abused its discretion in denying his motion for reconsideration, we must address Swanston's contention that Dennie failed to preserve his due process argument for appellate review because he did not object at the hearing to the trial court's consideration of the DHS report. As a general rule, to preserve an issue for appellate review a party must not only timely object to the admission of evidence, but also specify the basis for the objection. This general rule is codified under title 5, section 774 of the Virgin Islands Code, which provides:

> A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless (a) there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection, and (b) the court which passes upon the effect of the error or errors is of opinion that the admitted evidence should have been excluded on the ground stated and probably had a substantial influence in bringing about the verdict or finding.

While this rule requires specific objections to the admission of evidence, the United States Supreme Court has admonished against the strict application of such rules in all cases. In *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S. Ct. 719, 721, 85 L. Ed. 1037 (1941), the Court cautioned:

---

[1] We note, however, that in contravention of Rule 52(a) of the Federal Rules of Civil Procedure, the trial court did not state sufficient findings of fact "after the close of the evidence or . . . in an opinion or a memorandum of decision filed by the court." To the extent that the trial court did state findings on the record after the close of the evidence, these findings are insufficient to inform this Court of the factual basis for the trial court's conclusion that there was no substantial change in circumstances. *See Duffie v. Deere & Co.*, 111 F.3d 70, 73 (8th Cir. 1997) (noting that a trial court's findings of fact must be sufficient to "give an appellate court a clear understanding of the grounds of its decision."); *see also Chas. Pfizer & Co. v. Zenith Laboratories, Inc.*, 339 F.2d 429, 430-31 (3d Cir. 1964). While in many cases such an error would require a remand, a remand for an entry of findings is unnecessary in this case, because we are reversing on other grounds.

Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy.

Consistent with the policy, the Federal Rules of Evidence allow a court to take "notice of plain errors affecting substantial rights although they were not brought to the attention of the court." FED. R. EVID. 103(c). This rule, commonly referred to as the "plain error rule," has not been incorporated into the Uniform Rules of Evidence adopted by our Legislature. Nonetheless, this Court will cautiously heed the Supreme Court's counsel in *Hormel* that we should apply the rules concerning preservation of objections in such a manner as "to promote the ends of justice, not to defeat them." *Hormel*, 312 U.S. at 557, 61 S. Ct. at 721.

██ ██ While the application of this policy must be closely circumscribed and will excuse the failure to raise specific objections in only rare cases, when considering the policy in addition to other circumstances present in the instant case, we are inclined to review Dennie's objections to the trial court's consideration of the DHS report even though he did not state the specific grounds for his objections during the proceedings. *See Dopp v. HTP Corp.*, 947 F.2d 506, 516 (1st Cir. 1991) ("[M]indful of the fundamental flaw that infects the judgment below, we believe this to be a suitable case for invoking our power, sparingly and reluctantly used, to give a flexible interpretation to procedural rules on one of those rare occasions when doing so is strictly necessary to avoid a clear miscarriage of justice."). First, Dennie was acting *pro se* in the custody proceedings and "we have traditionally given *pro se* litigants greater leeway where they have not followed the technical rules of pleading and procedure." *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993) (citing *Riley v. Jeffes*, 777 F.2d 143, 147-48 (3d Cir. 1985)); *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir. 1983)).

Second, the transcript reveals that the trial judge conducted the custody hearing with significantly less formality than is generally expected of typical adversary proceedings. In fact, although the trial court clearly relied on the DHS report in rendering its judgment, it is unclear from the record of proceedings when, if at all, the trial court actually admitted the

report into evidence. In addition, although Dennie was sworn as a witness, his "testimony" was essentially an informal colloquy with the trial judge about Israel's preferences and the judge's belief that the child was acting as many children do in "playing the parents against each other." (Hr'g Tr. 3.) While it appears that courts have a tendency to be less formal than usual in custody proceedings, it is clear that Dennie never intended to waive his objections to the DHS report, and it seems inequitable to insist on strict adherence to the rules by a *pro se* party in such an informal atmosphere when such insistence would result in the loss of a right to due process. *See generally* James Russell Saunders, III, *Right, in Child Custody Proceedings, to Cross-Examine Investigating Officer Whose Report is Used by Court in its Decision*, 59 A.L.R.3D 1337, §2[a] (1974 & Westlaw Supp. 2009) ("Despite the tendency of the courts to be less formal in custody cases, it is said that the parties are still entitled to all the attributes of a fair trial in open court, in the absence of a waiver thereof."). Accordingly, despite Dennie's failure to articulate the specific basis for his objection at the hearing, we will consider his argument that the trial court's reliance on the report, when he was not provided with a copy of the report prior to the hearing and when the preparer of the report was not available for cross-examination, violated his right to due process.

## B. Dennie's Due Process Rights Were Violated

██ ██ While this issue appears to be a question of first impression for a Virgin Islands court, the United States Supreme Court has observed that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 1021, 25 L. Ed. 2d 287 (1970). The trial court in this case was undoubtedly rendering an important decision that turned on questions of fact. And in reaching this decision, the trial court was authorized by the Rules of the Superior Court to order the investigation by DHS. *See* SUPER. CT. R. 88 ("The court may require a social investigation by a probation officer or other person at any time during the proceedings".). We are unaware of any rule, however, which exempts such a report from the rules of evidence or which treats the investigator any differently than other witnesses. On the contrary, as a general rule, such reports are inadmissible hearsay when the preparer is not testifying in court, *see* V.I. CODE ANN.

tit. 5, § 932, and, to the extent that the testimony of an investigator is relied upon, it should be taken in open court. *See* FED. R. CIV. P. 43(a).[2]

▮ Indeed, the multitude of reported cases from other jurisdictions researched by this Court indicate that in child custody proceedings a litigant has the right to cross-examine an investigator whose report was used by the trial court in making its custody decision. The Oklahoma Supreme Court's reasoning in *Malone v. Malone*, 591 P.2d 296, 298 (Okla. 1979), is indicative of many of the decisions addressing the issue:

> Reports of experts are aids to the court in contested custody matters. However, it must be borne in mind that they are only aids, and, if they are not woven into the fabric of the record, they should not form the basis for a decision. If such reports are taken into consideration by the trial court, they must be made available to counsel, and the preparers thereof subject to cross-examination.

(citing *Stanford v. Stanford*, 266 Minn. 250, 123 N.W.2d 187, 192 (1963); *Kesseler v. Kesseler*, 10 N.Y.2d 445, 180 N.E.2d 402, 407, 225 N.Y.S.2d 1 (N.Y. 1962); *Commonwealth ex rel. Kuntz v. Stackhouse*, 176 Pa. Super. 361, 108 A.2d 73, 74 (Pa. Super. Ct. 1954)); *accord Jendreas v. Jendreas*, 664 N.E.2d 367, 370 (Ind. Ct. App. 1996) ("when reports are considered by the trial court in making its determination, the parties should have the opportunity to examine their veracity and the probity of their conclusions."); *Scheibe v. Scheibe*, 308 Minn. 449, 241 N.W.2d 100 (1976) ("The rule with respect to custody evaluation reports is that, absent a waiver, an appellant in a custody case is entitled to a new hearing if it appears that the trial court based its custody decision in part upon such a report without first giving the parties an opportunity to cross-examine the author of the report or to otherwise meet or answer adverse facts therein."); *Jacobsen v. Thomas*, 323 Mont. 183, 100 P.3d 106, 112 (2004) (" 'It is true that a judge violates due process requirements if he bases his child custody order on statements in a welfare department report without requiring the authors of the report to testify at a hearing and be subject to cross-examination.' " (citation omitted)); *Kelly v. Kelly*, 175 P.3d 400, 406 (Okla. 2007) (citing cases supporting the

---

[2] The Federal Rules of Civil Procedure are applicable in the Superior Court of the Virgin Island to the extent that the Federal Rules are not inconsistent with either procedural rules promulgated under the Virgin Islands Code or the Rules of the Superior Court. *See* Revised Organic Act § 21(c), 48 U.S.C. § 1611(c); SUPER. CT. R. 7.

proposition that "[t]he overwhelming majority of the states addressing the parental right to cross-examine a guardian *ad litem* have held either expressly, or by necessary implication, that an order or decree awarding or modifying custody must be based on evidence heard in open court in observance of the requirements of due process. Our sister states make it clear that due process does not exist in absence of the opportunity of a parent to cross-examine the guardian *ad litem*."); *Tucker v. Tucker*, 176 W. Va. 80, 341 S.E.2d 700, 702 (1986) (citing cases supporting the proposition that "courts in other jurisdiction have concluded that error is committed where custody determinations are made on the basis of investigative reports, without affording the parties an opportunity to present evidence or cross-examine the makers of the reports."); *see also* Saunders, *supra*, at § 3 (citing cases); C.T. Drechsler, *Consideration of Investigation by Welfare Agency or the Like in Making or Modifying Award as Between Parents of Custody of Children*, 35 A.L.R.2D 629, § 4 (1954 & Westlaw Supp. 2009) (citing cases supporting the proposition that "the general principle is well settled that, despite the judicial awareness of the necessity for informal procedure in custody cases, the parties, in the absence of their consent, cannot be deprived of any of the usual attributes of a fair trial in open court. Stated differently, the order or decree awarding the custody of a minor child to one of the parents must be based on evidence heard in open court in observance of the requirements of due process, rather than on information obtained by a private investigation.").

 These authorities, though not binding upon this Court, convince us that the caseworker who prepared the DHS report should have been available for cross-examination by Dennie at the final custody hearing. It is clear that the trial judge relied primarily, if not exclusively, on the report in rendering her decision denying Dennie's petition for a change of custody. Considering that Dennie did not have an opportunity to cross-examine the caseworker and also taking into account that he was not provided with a copy of the report until immediately before the hearing, we conclude that his due process rights were violated.[3] Under such

---

[3] In her brief and at oral arguments, Swanston argued that it is routine practice in child custody cases for the judge to order a DHS report. She argues, therefore, that even though Dennie did not receive the report until several minutes before the hearing, he could have subpoenaed the caseworker as he knew a report was forthcoming since the judge had ordered one. But Dennie did not know who prepared the report. He was not given the report until he

circumstances, the trial court abused its discretion in denying Dennie's motion for reconsideration, and he is entitled to a new hearing on his petition for a change of custody. *See Scheibe*, 241 N.W.2d at 100.

## IV. CONCLUSION

For the reasons stated above, we conclude that Dennie's objection to the trial court's consideration of the DHS report was sufficient to preserve the issue for appellate review. Because Dennie was not provided a copy of the report until immediately before the hearing and because the preparer of the report was not available at the hearing for cross-examination, Dennie's due process rights were violated. Inasmuch as the trial court relied primarily on the report in denying Dennie's petition, we will reverse the court's denial of his motion for reconsideration, vacate the denial of his petition for a change of custody, and remand the matter for a new custody hearing.

## ORDER OF THE COURT

**AND NOW**, consistent with the reasons outlined in the Opinion of the Court of even date, it is hereby

**ORDERED** that the Superior Court's Order denying Appellant's Motion for Reconsideration is **REVERSED**; and it is further

**ORDERED** that the Superior Court's Order denying Appellant's Petition to Modify Custody is **VACATED**; and it is further

**ORDERED** that this matter is **REMANDED** to Superior Court for a new hearing on Appellant's Petition to Modify Custody.

---

arrived at the hearing, and it was not even submitted to the trial court or Swanston until the day before the hearing, more than two weeks late. Accordingly, Swanston's argument, that Dennie should have foreseen that the trial court would rely upon the DHS report and should have subpoenaed the caseworker on that basis, is unavailing.