DELANA L. KOPPENHOEFER, Respondent, v PETER KOPPENHOE-FER, Appellant.

Second Department, July 18, 1990

APPEARANCES OF COUNSEL

*Sheila Callahan O'Donnell* for appellant.

*Martin R. Goldberg* for respondent.

OPINION OF THE COURT

MILLER, J.

The two children born to the parties, Hans, age 16 and Alicia, age 13, have been the subjects of embattled visitation disputes since their parents divorced in 1977. Pursuant to a separation agreement incorporated into the divorce judgment, the parties determined that custody of the children remain with the mother while the father was accorded liberal visitation. The liberal but unstructured visitation presented problems from the beginning, each parent complaining of deprivation.

By order dated March 24, 1982, the Family Court (in the first of three Family Court visitation orders), modified the liberal visitation provisions of the separation agreement. The order set forth specific hours for alternate weekend visitation (from Friday 5:30 P.M. "to Monday morning in time for school") and for midweek visitation (every Wednesday "from 5:00 P.M. to Thursday morning in time for school"), unspecified holidays were to be alternated, the father was entitled to four weeks every year, one in August, one at Christmas, and the remainder in separate days on 72 hours' notice.

Interwoven with the ongoing controversy surrounding visitation was the issue of support (a phenomenon so common to ongoing custody/visitation disputes as to raise the question of whether the primary motivation of the parties is economic rather than their interests in the child). The order dated March 24, 1982, also terminated alimony and increased child support for the children from $50 per week to $105 per week. However, child support payments were subsequently contested, with the father at times unilaterally deducting from the support checks certain extra expenses he paid for the children.

Visitation remained troubled. The parties never entirely followed the 1982 schedule. Each year the father mailed the mother a schedule of claimed holidays and weeks, which the parties followed without much alternation, the father always taking, for example, the weeks of Christmas, Easter, and the Thanksgiving holiday. The father returned the children directly to school Monday and Thursday mornings sometimes with and sometimes without their belongings, creating further confusion and disagreement.

Early in 1988, the mother petitioned for an increase in child support and modification of the visitation schedule, followed

by the father's cross petition for custody, or in the alternative, for direct payment of the children's expenses rather than to the mother. The issue of support was determined separately by a Hearing Examiner in April 1989, who increased the father's obligation to $150 per week plus $25 per week arrears.

The issues of visitation and custody raised by the 1988 petition and cross petition were heard by a second Family Court Judge, who appropriately assigned a Law Guardian and ordered psychiatric evaluations of both parties and the children. The professionals recommended retention of custody by the mother, with the result that the parties reached a stipulation of settlement, continuing the visitation and custody arrangements that had failed to work previously. In an order dated October 31, 1988, the court, pursuant to that stipulation, directed that the custody and visitation arrangements previously in effect remain unchanged. While the court did not alter the visitation arrangements, it solicited the father to recognize the children's needs. It is unclear whether the court ever interviewed Hans and Alicia, who were then 14 and 12 years old, respectively. The transcript of the hearing and the order make no reference to a consultation. Less than one year later, in further court proceedings, the parties' attorneys could not agree whether the Judge had interviewed the children in 1988.

In September 1989 the parties were back in court before a third Family Court Judge. The mother sought to modify the visitation schedule with regard to holidays and weekends, claiming she was deprived of certain holidays with the children, and that Mondays presented a special problem for the children requiring them to retrieve their belongings from the father's home after school, or carry them to school Monday morning. She further sought to forbid the father from making therapy arrangements for the children additional to those recently made by her. She had engaged a therapist for the children and herself only to find the father insisted on taking the children to a therapist of his choice.

In response the father once again cross-petitioned for custody. After two days of testimony from only the father and mother, the court, in the order appealed from, substantially revised the children's visitation schedule, *inter alia,* by shortening their weekend visitation with their father, ending it on Sunday at 7:00 P.M. rather than Monday morning, dividing their Christmas holiday between both parents, and requiring

them to spend four weeks of summer recess with their father, rather than distributing the father's four weeks throughout the year as previously. The children were not heard from directly, or through a Law Guardian. Whether or not the children found the original weekend visitation that ended on Monday unduly burdensome was never ascertained from them, although they were the obvious direct source of such information. The sacrifice to their academic, athletic, and social opportunities that may have resulted from the altered schedule remained unexplored from the children's viewpoint. The emotional, harmful impact on the children of ignoring their needs and preferences in such circumstances has been repeatedly documented (Wallerstein, Impact of Division on Children, 3 Psychiatric Clinics of North America, at 455-468 [Dec. 1980]; Loeb, *Fathers and Sons—Some Effects of Prolonged Custody Litigation,* 14 [No. 2] Bull Am Acad Psychiatric Law 177). The father appealed, contending that the order was improperly based. We agree.

In adjudicating custody and visitation rights, the most important factor to be considered is the best interests of the children *(Friederwitzer v Friederwitzer,* 55 NY2d 89, 93-95). "[I]n a custody proceeding arising out of a dispute between divorced parents, the first concern of the court is and must be the welfare and the interests of the children (Domestic Relations Law, § 70). Their interests are paramount. The rights of their parents must, in case of conflict, yield to that superior demand" *(Matter of Lincoln v Lincoln,* 24 NY2d 270, 271-272). The hearing court's determination will not be set aside or modified unless it lacks a sound and substantial basis *(see, Alfano v Alfano,* 151 AD2d 530; *Corsell v Corsell,* 101 AD2d 766). However, in order that more than lip service be accorded the vague and amorphous concept of best interests, the court must inquire into the emotional, intellectual, physical, and social needs of the children, as well as the children's preferences if the children are capable of verbalizing them.

It is well settled that to formulate a sound basis the court should seek the expertise of other professionals *(see, Hughes v Hughes,* 37 AD2d 606, 607; *Anonymous v Anonymous,* 34 AD2d 942, 943; *see also, Eschbach v Eschbach,* 56 NY2d 167, 171; Family Ct Act §§ 241, 249, 251, 252). In the case at bar, the court failed to refer to earlier forensic or other reports and evaluations, to order updated evaluations, or even to elicit information and recommendations from the children's current treating therapist.

The court should also ascertain the wishes of the children, particularly when, as here, the children are of a sufficient age to articulate their needs and preferences to the court *(see, Eschbach v Eschbach, supra; Dintruff v McGreevy,* 34 NY2d 887; *Feldman v Feldman,* 58 AD2d 882; *Hughes v Hughes, supra).* While the express wishes of children are not controlling, they are entitled to great weight, particularly where their age and maturity would make their input particularly meaningful *(Hughes v Hughes, supra; cf., Eschbach v Eschbach, supra).* This court has held that the preference of a 15 year old was "entitled to great weight" *(Bergson v Bergson,* 68 AD2d 931, 932). Further, this court has cited the failure of the trial court to ascertain the wishes of a 16 year old as the basis for reversal of a custody determination *(see, Feldman v Feldman, supra; see also, Spain v Spain,* 130 AD2d 806, 809). In this case, the children who form the subject of this appeal were 14 and 12 years old, respectively, at the time of trial and concededly mature. Their input would have been highly relevant.

The preferred practice in a custody/visitation case in order to determine best interests, is to have an in camera interview with child on the record in the presence of the Law Guardian *(see, e.g., Hasan Abu Romi v Hazieem Hamdan,* 70 AD2d 934; *Matter of Ehrlich v Ressner,* 55 AD2d 953; *Matter of Fleishman v Walters,* 40 AD2d 622, 623; *see also, Eschbach v Eschbach,* 56 NY2d 167, *supra; Matter of Lincoln v Lincoln,* 24 NY2d 270, 272, *supra;* Family Ct Act § 664; CPLR 4019). The record in this case fails to indicate that Hans and Alicia, the subject of four separate visitation orders, have had the opportunity to communicate with the court.

Furthermore, in disputed custody/visitation litigation, the appointment of a Law Guardian has been recognized as appropriate and helpful to the court. The attorney may act as champion of the child's best interest, as advocate for the child's preferences, as investigator seeking the truth on controverted issues, or may serve to recommend alternatives for the court's consideration *(see,* Family Ct Act § 249; CPLR 1202; Judiciary Law § 35 [7]; *Braiman v Braiman,* 44 NY2d 584; *Borkowski v Borkowski,* 90 Misc 2d 957). This court has held that the failure of the court-appointed Law Guardian to take an active role in the proceedings is grounds for vacatur of an order based on an insufficient record *(see, Matter of Elizabeth R. [Catherine S.],* 155 AD2d 666). No Law Guardian spoke for the children in these proceedings.

We therefore find that the order appealed from lacked a sound and substantial basis pursuant to law. In determining custody and visitation proceedings in the children's best interest, the court's primary focus must be upon the children, not the parents. The court's obligation as *parens patriae* of children requires that the children's days and years be shared by the parents in accordance with the court's considered assessment of the children's needs and preferences rather than distributed and divided between the embattled parents as the spoils of matrimonial warfare.

Accordingly, the order is reversed insofar as appealed from, on the law, without costs or disbursements, and the matter is remitted to the Family Court for a hearing and determination de novo on the issues of visitation in accordance herewith. Pending the hearing and determination, the present visitation schedule, set forth in the order appealed from, shall remain in effect so as not to disrupt the family further.

THOMPSON, J. P., RUBIN and ROSENBLATT, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements, and the matter is remitted to the Family Court, Orange County, for a hearing and determination de novo on the issues of visitation in accordance herewith. Pending the hearing and determination, the present visitation schedule, set forth in the order appealed from, shall remain in effect. [*See*, __ AD2d __, Nov. 19, 1990.]