OPINION OF THE COURT
William P. Warren, J.
By order to show cause filed with this court on February 27, *87 2003, respondent moved this court by requesting that the Law Guardian appointed for the children and petitioner, B.A., show cause why an order should not be entered disqualifying the Law Guardian, the Legal Aid Society of Rockland County, from representing the parties’ children, C.A. (date of birth Aug. 17, 1993), C.A. (date of birth Mar. 19, 1990), and C.A. (date of birth Apr. 21, 1988) in this proceeding and substituting a new law guardian for said children. The application was made returnable on March 14, 2003. The Law Guardian, Veronica J. Young, Esq., filed an affirmation in opposition to said application. Linda Christopher, Esq., attorney for the petitioner, also filed an affirmation in opposition.
In a prior motion dated December 6, 2002, respondent had moved this court for an order disqualifying the Law Offices of Linda Christopher from continuing to represent the petitioner in the visitation and custody matter before this court upon the ground that there existed a conflict of interest because the Legal Aid Society, a nonprofit organization of which petitioner’s attorney is the president, serves as the Law Guardian for the children in this proceeding. Citing Code of Professional Responsibility DR 5-101 (22 NYCRR 1200.20) respondent stated that Ms. Christopher should be disqualified from representing petitioner because as president and as a member of the Board of Directors of the Legal Aid Society she “wields power and influence over the Legal Aid attorney’s salary, tenure and working conditions” and her name appears at the top of the letterhead used by the law guardian in behalf of the Legal Aid Society. Therefore, respondent concluded, “the representation of the petitioner by Ms. Christopher impacts * * * on the law guardian’s ability to exercise professional judgment on behalf of the children who are her clients due to her association with the Legal Aid Society.”
After reviewing the arguments of both the petitioner and respondent filed in support and in opposition to the prior motion* this court found that the petitioner’s attorney did not have a conflict of interest by continuing to represent the petitioner. In so holding, this court found that “[t]he exercise of petitioner’s attorney’s professional judgment on behalf of her client will not be reasonably affected by her own financial, business, property or personal interests so as to warrant her disqualification. The interests of counsel for the petitioner are *88 not affected because she is president of the society which employs the law guardian for the children.” This court further found that it could not envision a possibility where the petitioner’s attorney’s representation of her client might be affected because of her position on the board of directors. Respondent’s attorney’s application was, therefore, denied and petitioner’s counsel was allowed to continue to represent the petitioner in the subject action.
Nonetheless, in this court’s dicta, it noted that the Law Guardian’s professional judgment reasonably may be affected by her own financial, business or personal interests when she is an adversary of the president of the corporation of which she is an employee. The court, for illustrative purposes, provided a few examples of the potential for conflict.
In the instant motion respondent is asking this court to disqualify the Law Guardian, who is a staff attorney of the Legal Aid Society of Rockland County, citing all the grounds contained in the original application and this court’s dicta from its February 20, 2003 decision. In her affirmation in opposition, petitioner’s counsel respectfully refers this court to her affirmation in opposition originally submitted in connection with respondent’s original motion for an order to disqualify petitioner’s counsel. However, she reiterates in her affirmation in opposition to the instant application that as president of the Legal Aid Society she does not “wield any actual influence or power over the law guardians, the law guardians do not have any personal, business, financial or other interests that come into play by virtue of* * * [her] position, and therefore no DR 5-101 (a) conflict exists.”
In referencing the illustrations contained in this court’s decision and order of February 20, 2003, Ms. Christopher argues that none of the potentials for conflict laid out in this decision poses an actual conflict. While Ms. Christopher serves as an ex officio member of all committees, including the grievance committee, she argues that a grievance against the Law Guardian has never been filed during her tenure as president. Even if a grievance was filed, she claims, it would be necessary for her to recuse herself from the committee and she would not be involved in the determination on the grievance.
In responding to this court’s illustration of the potential for conflict of the Law Guardian who is aspiring to become the director of the Legal Aid Society, she claims she would not be the only person who would be involved in the decision to hire the director, but instead it would be done by the entire board of directors wherein she would only vote to break a tie.
*89 Finally, Ms. Christopher argues that while you can take any situation to its extreme and come up with “a multitude of possibilities,” the question is how likely is the possibility. Analyzing the situation objectively, Ms. Christopher argues, the court must conclude that the Law Guardian’s professional judgment would not be reasonably affected by virtue of her position as president of the Legal Aid Society and that there is no basis for the Law Guardian to be disqualified.
In Veronica J. Young, Esq.’s affirmation in opposition, she makes several points in her attempt to convince the court that she should not be disqualified as the Law Guardian for the parties’ children. Her first point is that the Legal Aid Society of Rockland County was representing the children in this action prior to Ms. Christopher’s appearance. Moreover, she states that the law guardian continues to advocate the same position as was advocated before Ms. Christopher was retained by the petitioner. This position is also “consistent with the recommendations made by the forensic psychiatrist in his report to the court.” Therefore, she concludes that Ms. Christopher’s position on the board as well as her board membership is “of no consequence with respect to the positions that we take and the representation that we give our clients.”
In the Law Guardian’s next point, she states that this court’s dicta in its February 20, 2003 decision is based upon a “misinterpretation of the applicable ethical rules governing this type of situation.” She cites ABA Committee on Ethics and Professional Responsibility, Formal Opinion 345 (1979) for the proposition that board members of legal services programs can represent parties adverse to clients represented by the program staff’s lawyers because there exists no conflict with Canon 5 and/or Disciplinary Rule 5-101 (a). Likewise, Ms. Young argues that New York State Bar Association Committee on Professional Ethics Opinion 643 clearly establishes that no conflict exists where legal service organizations organize a panel of volunteer lawyers to represent financially eligible clients where a lawyer member of the organization’s governing board represents an opponent of the organization’s client. In citing Code of Professional Responsibility DR 5-110 (22 NYCRR 1200.29), which was added to New York’s Code of Professional Responsibility effective September 1, 1990, Opinion 643 states that DR 5-110 would permit a lawyer member of a legal services organization’s governing board to represent a paying client or a pro bono client as an opponent of the organization’s client. Ms. Young claims that although there are two excep *90 tions under DR 5-110, it is clear that a conflict does not arise simply because private counsel is a member of the board of directors. Moreover, Ms. Young argues that New York State Bar Association Opinion 643 specifically overruled an earlier opinion, New York State Bar Association Committee on Professional Ethics Opinion 489, which held that it is clearly inappropriate for a member of the board to accept a private retainer for the purpose of defending a litigant who has been sued by one of the organization’s clients.
In the wake of the passage of DR 5-110 in 1990, and the express overruling of Opinion 489 by Opinion 643, Ms. Young states that respondent’s prior motion to disqualify petitioner’s counsel and now the Law Guardian have been considered and rejected by virtue of said opinion and disciplinary rule.
Ms. Young next argues that there is no inherent conflict when board members and program staff represent clients of adverse interests. She claims that respondent’s counsel ignores the main thrust of DR 5-110 that representation of adverse interests is permissible. As a matter of law, she argues, respondent’s allegation that “an inherent conflict exists because Ms. Christopher is the president of the board” lacks any specificity and merely relies on her position on the board and no concrete allegations of an actual conflict. If DR 5-110 was to be construed as an “appearance of conflicts rule,” the Law Guardian argues, the exceptions contained in DR 5-110 would swallow the general rule because “an appearance of conflict, according to Mr. Abel, is inherently present in all cases in which adverse interests are represented.” She requests that the court not eviscerate the general rule of DR 5-110 as requested by respondent’s counsel.
Finally, on this point, the Law Guardian argues that it is the burden of the movant to disprove the existence of a conflict rather than Ms. Christopher or the Law Guardian proving that the circumstances in this case fall under the general rule contained in DR 5-110.
The Law Guardian also argues that Linda Christopher is ethically constrained to not use the machinery of the Legal Aid Society to undermine the work of the Legal Aid on behalf of its clients. Given that constraint, there could never be a situation where Ms. Christopher’s representation of a client adverse to the organization’s client would pose an actual conflict.
Finally, Ms. Young argues that the illustrations provided by the court in its decision of February 20, 2003 are both theoretically and actually de minimis. She argues essentially that since *91 there has been no evidence of bias by the Law Guardian or influence by Linda Christopher, no conflict exists.
Ms. Young attaches to her affirmation in opposition the affirmation of the executive director of the Legal Aid Society who seeks to support the arguments contained in her affirmation. He states that no member or officer of the Legal Aid’s Board of Directors has attempted to exert any influence upon him vis-avis any case in which a Legal Aid staff member and/or board member represented clients with adverse interests during his 18-year tenure as executive director. He alleges that no formal grievance has been filed against a law guardian since the program’s inception. Furthermore, addressing Ms. Christopher’s role on the Legal Aid Society’s Board of Directors, he states that due to her many years of service, her local community ties and her long time involvement with the courts and the judiciary as a Family Court practitioner, she is a vital component of the board to whom the board can turn for Family Court concerns. She is presently the only active Family Court practitioner on the board. To require that Ms. Christopher or the Law Guardian be disqualified, Mr. Bursztein concludes, would force Ms. Christopher to resign from the board because she would “be required to abandon a large part of her practice to remain on the board.”
Based upon this court’s review of the papers filed in the previous motion, the papers filed in support and in opposition to the present application to disqualify the Law Guardian and appoint a substitute law guardian for the parties’ children and this court’s decision and order of February 20, 2003, for the reasons stated below this court grants respondent’s application to disqualify the Legal Aid Society of Rockland County from representing the parties’ children in this matter.
In citing Formal Opinion 345 of the American Bar Association Committee on Ethics and Professional Responsibility for the proposition that no conflict exists for the Law Guardian in this matter, this court must examine the situation the committee was asked to address. The Committee on Ethics and Professional Responsibility stated that the inquiry that they were examining was whether a board member or lawyer in the board member’s firm can represent a client in a lawsuit against an individual who comes to the program to defend the case. The question that is posed by the committee for consideration is: “In that circumstance, must the staff lawyer disqualify himself?”
This court had found in its decision of February 20, 2003 that the board member, in this case Linda Christopher, Esq., *92 had no conflict of interest. Therefore, the decision of February 20, 2003 is in conformity with Formal Opinion 345 of the American Bar Association. In the circumstances presented by the instant motion, it is not the board member or lawyer in the board member’s firm whose professional judgment we are examining. It is not the exercise of Linda Christopher’s professional judgment on behalf of her client, the petitioner, which we are examining to determine if it will be reasonably affected by her own financial, business, property or personal interests so as to warrant her disqualification. Instead, we are looking at the matter from the standpoint of the Law Guardian. One cannot infer from the language of Formal Opinion 345 of the American Bar Association or Opinion 643 of the New York State Bar Association that it is appropriate for the Legal Aid Society of Rockland County to represent children where a board member of that same organization represents an adverse party in that same custody/visitation proceeding.
The Legal Aid Society’s assertion that Opinion 345 stands for the proposition that no conflict exists for the Law Guardian in this matter belies a true reading of the opinion. In point of fact, Opinion 345 recognizes the potential for conflict in a board member’s representation of a client with an adverse interest to a program client. In its Opinion 345 the American Bar Association Standing Committee on Ethics and Professional Responsibility recognized that there may be problems when board members represent clients in an adversarial position to a client represented by the program. Although the committee concluded that the Code of Professional Responsibility is not necessarily violated by the representation by a board member or his firm of a client involved in litigation against a program client, nonetheless they did state the following:
“Having said all this, the Committee does not concur that there is no problem in a Board member’s representation of a client adverse to a Program client. Depending upon the nature of the case, the circumstances of the clients or otherwise, one counsel or the other may feel unexpectedly self-restrained from representation of the client in the fullest sense. From the clients’ side it should not be overlooked that clients in the poverty group, particularly, may tend to be submissive and to acquiesce in the representation — feeling that they have no choice, but at the same time feeling concerned that they may not be getting indepen *93 dent representation. The real possibility of an appearance of impropriety, even though no actual impropriety may exist, is also troubling to the Committee.”
“Accordingly, it is important that the Board and clients on both sides be made aware of the Board member’s role and the fact that he or a lawyer in his firm is representing a client opposing a Program client. The clients and counsel on both sides must feel comfortable that in the particular circumstances neither client will be deprived of independent and uninhibited representation.” (Emphasis supplied.)
Looking at the circumstances and the clients in this matter from the vantage point of a disinterested attorney, one can only wonder how it could be explained to a child, especially a young child, that no conflict could potentially exist when the law guardian, who is to act as the child’s independent legal counsel, is employed by an organization where the president of that organization represents his/her parent. Since a child cannot, as a matter of law, consent to the representation by a law guardian where in the opinion of a disinterested lawyer the law guardian’s professional judgment will be or reasonably may be affected, the law guardian cannot continue to represent the child. (Code of Professional Responsibility DR 5-101 [a] [22 NYCRR 1200.20 (a)].)
Neither Opinion 345 nor 643 addresses the unique situation that we have here where the legal service’s organization’s client is a child. Formal Opinion 345 states that DR 5-101 (a) requires that, “except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property or personal interests.” A plain reading of DR 5-101 (a) reveals that there must be full disclosure and consent of the client before a lawyer can accept employment or continue employment if the exercise of professional judgment on behalf of that client will be or reasonably may be affected by the lawyer’s own financial, business or property interests. The Law Guardian’s client cannot legally consent to the representation. It also does not matter whether the Law Guardian was on the case before Ms. Christopher was retained. DR 5-101 states that the law guardian shall not accept or continue employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected. Ms. Christopher’s entry *94 into the case at whatever stage of the proceeding is, therefore, not relevant with regard to whether the Law Guardian’s own financial, business, property or personal interests may reasonably be affected.
Reading the entire disciplinary rule as a whole, it is clear to this court that DR 5-101 requires this court to determine whether the Law Guardian’s continued representation of the parties’ children may reasonably be affected by her own financial, business, property or personal interests. The standard that the rule requires this court to apply is an objective one, namely that of a disinterested lawyer. In this case, since a child cannot, as a matter of law, provide consent, Ms. Young and the Legal Aid Society of Rockland County are not permitted to continue with her representation.
The standard to apply under Disciplinary Rule 5-101 is whether the exercise of Ms. Young’s professional judgment on behalf of her clients may be reasonably affected by the fact that Linda Christopher represents an adverse party to Ms. Young’s client. The court is to evaluate this standard from an objective and impartial disinterested lawyer’s viewpoint and not from the subjective viewpoint of the Law Guardian. The president of the board of the organization which employs the Law Guardian is the attorney for a party who has or may have an adverse interest to the child. She is the leader of the organization by virtue of being the president and as defined by the bylaws of the Legal Aid Society. The court must evaluate this situation by viewing it as an objective lawyer. Neither the subjective intent of the Law Guardian nor the ethical constraints of the president of the society are determinative. They do not meet the standard required by DR 5-101.
Evaluating this fact pattern from an objective and disinterested lawyer’s point of view, this court cannot conclude that the Law Guardian’s professional judgment may not be reasonably affected by her own financial, business, property or personal interests. It is the opinion of this court that a disinterested attorney would reasonably believe that under the facts of this case, the Law Guardian’s professional judgment reasonably may be influenced since her adversary is a member and president of the Board of Directors of the Legal Aid Society, the agency by which she is employed.
While the court’s illustrations contained in its decision of February 20, 2003 may be theoretical and may be considered a de minimis risk as the Law Guardian argues, a fortiori, what has actually occurred in the past is not determinative. The *95 court is not persuaded by the Law Guardian’s argument that since there has been no evidence of bias by the Law Guardian or influence by Linda Christopher in the past, that no conflict exists. In fact, it is not necessary to demonstrate actual bias or influence, only the potential therefor is required.
The Law Guardian argues that, by virtue of the passage of Disciplinary Rule 5-110 in 1990 (a general rule which established that no conflict of interest exists in cases where board members and program staff represent clients with adverse interests), no conflict does or can exist. Based upon this court’s review of DR 5-110, and the ethical opinions citing said disciplinary rule, it is clear that this rule refers to the conflict from the standpoint of a lawyer serving as a director and not to an attorney employed by the legal services organization. Canon 5, Disciplinary Rule 5-101 and Disciplinary Rule 5-110 clearly allow Linda Christopher, as a member of the board of directors of the nonprofit legal organization, to represent the petitioner in this matter. However, said Canon and Disciplinary Rules do not address the ethical constraints of a law guardian wlio represents a child who cannot as a matter of law consent to the representation “after full disclosure of the implication of the lawyer’s interests.” (Code of Professional Responsibility 5-101 [22 NYCRR 1200.20].)
The Law Guardian, and the executive director’s argument of the dire consequences to the board and the legal services organization if the court disqualifies the Legal Aid Society of Rock-land County from participating in any case in which Linda Christopher represents an adverse party to the action, is neither within this court’s control nor germane to the issue before the court. The president of the board and/or members of the board of the Legal Aid Society are not required to be active members of the Family Court and matrimonial bars. In fact, the executive director points out to the court that only one member of the board maintains any significant Family Court practice. Who the legal services organization selects for its board and as its president is totally within the control of the legal services organization. The fact as to who they have chosen or choose in the future does not change the ethical constraints placed on the Law Guardian.
Finally, the Law Guardian argues that she is not an adversary of the president of the corporation of which she is an employee because according to case law the law guardian plays a neutral role in a custody proceeding where a law guardian represents the children’s best interests. She further argues *96 that the law guardian’s role is not adversarial to either party and that the law guardian looks out for the best interests of the child.- She claims that her ability to represent the child is not compromised by the fact that the petitioner’s counsel is president of the Legal Aid Society.
Appellate courts have long recognized the dual role of the law guardian as both the champion of the best interests of their clients and as advocates for their express preferences, if any. This includes being an investigator seeking truth on controverted issues and as recommenders of alternatives for the court’s consideration. (See, Koppenhoefer v Koppenhoefer, 159 AD2d 113 [1990]; Vecchiarelli v Vecchiarelli, 238 AD2d 412 [1997].) Therefore, the role of the law guardian is not merely being a neutral by looking out for the best interests of the child, but as an advocate participating fully in the pretrial stages and trial stages of any proceedings. In its January 1994 pamphlet publication entitled Law Guardian Representation Standards Volume II, Custody Cases, the New York State Bar Association’s Committee on Children and the Law describes the role of the law guardian as counsel for children as follows:
“The law guardian is an attorney assigned to represent the child. Hence the law guardian is an advocate, participating fully in motion practice and pre-trial procedures * * *. At trial the law guardian should introduce relevant evidence, subpoena relevant material and cross-examine witnesses * * *. In short, the law guardian acts as an attorney and should use every lawyering skill appropriate to further a result favorable to the child client’s interest and position * *
While the law guardian is often perceived as being “neutral” in otherwise adversarial proceedings, this is not always so since the law guardian and his or her client often formulate a position which supports that of one of the litigants. Since there exists a reasonable possibility that the law guardian can take an adverse position to that of one party in any visitation or custody case in which they represent the child, to describe the law guardian’s role as “a neutral” discounts their role as a zealous advocate for the child participating fully in both pretrial and trial procedures. Therefore, the Law Guardian’s position that her office and Linda Christopher’s office are not truly adversaries ignores her dual role as champions of the best interests of their clients and advocates for their express preferences.
*97 For all of the reasons stated above, this court grants respondent’s application to disqualify the Legal Aid Society of Rockland County from representing the parties’ children C., C. and C. in this proceeding. A substitute law guardian from the law guardian panel shall be appointed by this court to represent the children in all further proceedings.

 The Law Guardian did not file any papers in support or in opposition to the motion and did not participate in the application.