■ In the Matter of TRAVER HILDENBRAND, Appellant, v ALBERTA L. HILDENBRAND, Respondent. (And Another Related Proceeding.) [833 NYS2d 251]—

Peters, J. Appeal from an order of the Family Court of Otsego County (Burns, J.), entered March 22, 2006, which, inter alia, dismissed petitioner's application, in two proceedings pursuant to Family Ct Act article 6, for custody of the parties' child.

The parties are the parents of one child, born one year prior to their marriage in 1999. They lived together, as a family, in North Carolina until respondent was deployed to Iraq in early 2003. While respondent was overseas, petitioner telephoned her and informed her that he no longer wanted to be married. Upon completion of her assignment, respondent returned to North Carolina and moved out of the marital residence. With her consent, conditioned upon an extensive uninterrupted summer visitation, petitioner moved with his fiancée and the child to Otsego County. By a May 2005 judgment from a North Carolina court, the parties were divorced without resolving the issue of custody. In October 2005, petitioner initiated this custody proceeding, prompting respondent's cross petition for custody. After a hearing, sole custody was awarded to respondent with visitation to petitioner. Petitioner appeals.

With no dispute that the parties' acrimonious relationship precludes an award of joint custody (see Matter of Fedash v Neilsen, 211 AD2d 1003, 1004 [1995]), we are left to review whether Family Court's award of sole custody to respondent represents "the best interests of the child under the totality of the prevailing circumstances" (Matter of Hostetler v Montanye, 30 AD3d 720, 721 [2006], lv denied 7 NY3d 710 [2006]; see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Matter of

*Defayette v Defayette*, 28 AD3d 820, 821 [2006]). In reaching that determination, a myriad of factors were considered, including the "relative stability and financial situation of the respective parents" (*Matter of Farnham v Farnham*, 252 AD2d 675, 676 [1998]), their ability to foster and guide the child's emotional and intellectual development and their flexibility to nurture and provide for a meaningful relationship with the other parent (*see Matter of Hostetler v Montanye, supra* at 721; *Matter of Bessette v Pelton*, 29 AD3d 1085, 1087 [2006]; *Matter of Defayette v Defayette, supra* at 821). Recognizing that Family Court is in the best position to assess witness credibility, great deference will be accorded to its findings (*see Matter of Bessette v Pelton, supra* at 1087), unless they lack a sound and substantial basis (*see Matter of Hostetler v Montanye, supra* at 722).

Family Court's findings are firmly rooted in this record. Respondent is employed on a full-time basis and remains a member of the Army Reserves. She receives medical, dental and vision coverage for herself and the child through her civilian employment and is also enrolled in the military retirement system. Respondent fully understands her parental role, recognizing that by joining the Army Reserves, she could attain further schooling along with extra income and benefits.* Respondent also found that her military experience taught her to live a more structured and disciplined life, which she exhibited when she terminated an engagement after her fiancé exhibited a drinking habit. Respondent also demonstrates a genuine willingness to facilitate the child's relationships with her extended family members in North Carolina where she continues to reside with members of petitioner's family. Through respondent's efforts, the child has had contact with all of the parties' relatives who live in North Carolina, resulting in a deepening of a "sister-like" relationship with her North Carolina cousin.

In contrast, despite the positive relationship that petitioner has with the child, his life in New York is marked by relative disarray. He lived here for one year without ever taking the child to the dentist or establishing a primary care pediatrician for her. Family Court evaluated his demeanor as "angry, defensive, and evasive," especially when questioned as to why he has little or no contact with his family in North Carolina or why he failed to encourage the child to telephone respondent or send her correspondence while she was overseas.

Reviewing the totality of these circumstances, there exists a sound and substantial basis for Family Court's determination.

---

* Both respondent and petitioner dropped out of high school in the 10th grade. Respondent attained her GED before signing up for the Army Reserves.

In so finding, we consider the informal custodial arrangements made between these parties prior to the hearing as but one factor aiding the court in its ultimate determination (*see Matter of Bessette v Pelton, supra* at 1087). No error can be found in the failure to conduct an in camera interview of the child, considering no prior request was made (*see Matter of Picot v Barrett*, 8 AD3d 288, 289 [2004]; *Matter of Rudy v Mazzetti*, 5 AD3d 777, 778 [2004]; *Matter of Bougor v Murray*, 283 AD2d 695, 696 [2001]).

As to the issue of visitation, the record supports the contention that regular visitation with petitioner would be in the child's best interests. While we agree with Family Court that the buffer imposed upon the summer visitation schedule promotes stability for the child (*see Matter of Fedash v Neilsen*, 211 AD2d 1003, 1005 [1995], *supra*), we find that the order granting visitation from December 26 to December 31 in 2006 and 2007 should be extended to include all subsequent years.

Crew III, J.P., Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the order is modified, on the facts, without costs, by extending petitioner's visitation with the child from December 26 to December 31 in 2008 and in every year thereafter, and, as so modified, affirmed.