OPINION OF THE COURT
Ann E. O’Shea, J.
This is a custody proceeding brought on by the mother’s petition for custody of three of the parties’ four children, Nisaa S., *798 born on xx/xx/1997, Yusef S., born on xx/xx/1999, and Hakim S., born on xx/xx/2001.[1] The children have resided primarily with their father since the beginning of November 2007 when, according to the father, the mother left but, according to the mother, the father locked her out of the family home.
On April 12, 2010, the Attorney for the Children (AFC or the children’s attorney) citing child-protective concerns, requested that the court interview the children in camera. Counsel for the mother and the father did not object, although the father’s attorney asked to be provided a transcript of the interviews, to which the AFC strenuously objected. I determined, without objection, to hold the in camera interviews but to withhold the transcripts of those interviews from the parents and their attorneys in order to afford the AFC an opportunity to file a motion to keep them confidential and counsel for each parent to respond. On April 30, 2010,1 met separately with Nisaa, Hakim, and Yusef. The children’s attorney was present during each of the interviews; the parents and their attorneys were not.
On June 17, 2010, the AFC filed a motion for an order granting the children’s mother temporary custody and directing that the transcripts of the in camera interviews remain confidential and that they be sealed for transmission to the appellate court in the event of appellate review. Neither the mother nor the father submitted any response to the AFC’s motion.
On June 23, 2010, based in large measure on what I learned during the in camera interviews, I determined that I had sufficient information to grant the AFC’s motion to the extent it sought a temporary transfer of physical custody of Nisaa and Hakim to the mother (see e.g. Assini v Assini, 11 AD3d 417, 418 [2d Dept 2004]; Rosenberg v Rosenberg, 60 AD3d 658 [2d Dept 2009]). I reserved decision with respect to Yusef to afford his attorney time to investigate a report that he had run away from his mother’s home during one of her visitation periods to return to his father. I subsequently awarded the mother temporary custody of Yusef as well based upon the recommendation of his attorney.
This decision addresses that part of the AFC’s motion for an order that the transcripts of the in camera interviews remain confidential and be sealed for transmission to the appellate court in the event of an appellate review. As no opposition *799 papers have been filed with the court, my determination is based upon the submission of the Attorney for the Children alone (see Middle Is. Drywall Supply v Kaufman & Broad Homes of Long Is., 74 AD2d 634, 635 [2d Dept 1980]). Except as described below, the motion is denied.
The instant motion pits the responsibility of a court in a custody proceeding to obtain what may be important, relevant information from the subject children, while shielding them as much as possible from the emotional fallout or retaliation that might ensue if their disclosures are revealed, against the court’s obligation to insure that the parents’ due process rights are protected, that they are afforded an opportunity to test, refute, or explain the children’s revelations, and that the court’s decision be informed by the most complete and tested evidence available.
In Kesseler v Kesseler (10 NY2d 445, 451 [1962]), the Court of Appeals held that a trial court may properly consider, but withhold from counsel for the opposing parties, reports which the parties stipulated could remain confidential, but that reports which are not included in the stipulation are subject to standard evidentiary rules and may not be considered by the court unless they are made available to the parties’ counsel (id. at 452, 455). In dicta, and by way of an analogy to the reports in issue in the case, the Court noted that in custody cases “parties frequently stipulate that the Trial Justice may interview the child in chambers . . . and . . . whatever impressions or information the child may give privately to him ... is necessarily secret unless the Justice chooses to disclose it.” (Id. at 451.)
Subsequently, in Matter of Lincoln v Lincoln (24 NY2d 270 [1969]), the Court of Appeals discounted the suggestion in Kesseler that a court could interview a child in camera only if the parties stipulated that it could do so, and held that a trial court in a custody case has discretion, without the consent of the parties — or even over their objection — to interview the child without the parents or their counsel present (id. at 274). The Court reasoned that the rights of the parents must give way to the welfare and interests of the child in custody cases and that, in order “to obtain a full understanding of the effect of parental differences on the child, as well as an honest expression of the child’s desires and attitudes” (id. at 272), the court may need to interview the child in private. Such interviews should be private in order to “limit the psychological danger to the child” and avoid placing the child “in the position of having its relation *800 ship with either parent further jeopardized by having to publicly relate its difficulties with them or be required to openly choose between them” (id.). Moreover, private interviews of the child by the court “will . . . be far more informative and worthwhile than the traditional procedures of the adversary system — an examination of the child under oath in open court” (id.).
Having concluded that judges in custody proceedings have discretion to hold private interviews with the subject children, the Court also recognized that there were “grave risks” in such interviews:
“A child whose home is or has been torn apart is subjected to emotional stresses that may produce completely distorted images of its [sic] parents and its [sic] situation. Also its [sic] feelings may be transient indeed, and the reasons for its [sic] preferences may indicate that no weight should be given the child’s choice. Without a full background on the family and the child, these interviews can lead the most conscientious Judge astray.” (Id. at 273.)
Acknowledging the risks, the Court cautioned trial courts to “not use any information, which has not been previously mentioned and is adverse to either parent, without in some way checking on its accuracy during the course of the open hearing” (id.; see also Matter of Benjamin v Benjamin, 48 AD3d 912 [3d Dept 2008]).[2]
Lincoln raised two distinct and competing concerns. The first is that the subject child be permitted to voice her opinions and preferences and that her confidences in those respects be honored so that she may speak freely without fear that she may be hurting the feelings of one or the other parent or that she will incur the wrath or resentment of the less-preferred parent. The Court resolved that concern by holding that a trial judge may interview the child without her parents or their attorneys present and without requiring her to testify or be subjected to cross-examination in open court.
The second and thornier concern raised by Lincoln is that the accuracy of information gleaned from the child, which may be *801 adverse to one or both parents, should be tested in the normal course of an evidentiary hearing. The Court did not provide any guidance as to how such testing might be accomplished without divulging the information to the child’s parents or their attorneys, other than to express confidence that trial judges would find a way (Lincoln, 24 NY2d at 273).[3]
Section 664 of the Family Court Act and rule 4019 of the CPLR require that stenographic records be made of in camera interviews of children and that, in the event of an appeal, the transcripts of the interviews be sealed and transmitted as part of the record to the appellate court (see also Koppenhoefer v Koppenhoefer, 159 AD2d 113, 117 [2d Dept 1990]; Mosesku v Mosesku, 108 AD2d 795 [2d Dept 1985]; Romi v Hamadan, 70 AD2d 934 [2d Dept 1979]; Matter of Ehrlich v Ressner, 55 AD2d 953, 954 [2d Dept 1977]). While a number of courts have strongly suggested that to preserve the confidences of the child, the transcripts of in camera interviews should be sealed (see e.g. Matter of Buhrmeister v McFarland, 235 AD2d 846, 848 [3d Dept 1997]; Matter of Sellen v Wright, 229 AD2d 680, 681-682 [4th Dept 1996]; Matter of Ladd v Bellavia, 151 AD2d 1015, 1016 [1989]; Fleishman v Waters, 40 AD2d 622 [4th Dept 1972]), no court, as far as I am aware, has held that sealing such transcripts during the course of the trial is mandatory or that trial courts lack discretion to provide the parties or their counsel with copies or otherwise test the accuracy of the child’s in camera disclosures (cf. Matter of Verry v Verry, 63 AD3d 1228, 1229 [3d Dept 2009] [as a general rule what happens at a Lincoln hearing is confidential “absent a direction to the contrary”]; Matter of Anderson v Harris, 73 AD3d 456, 458 [1st Dept 2010] [in camera “testimony” held confidential in absence of “sound reason for its disclosure”]).
To resolve the issue, it is helpful to distinguish between the types of disclosures that a child may make during the course of an in camera interview and the relative benefit or necessity of keeping some of them confidential while disclosing others. The *802 child may express her views as to the relative qualities or demerits of her respective parents or her preference for one or the other parent — essentially her opinions on the matter of custody. An in camera interview may also give the judge the chance to learn something about the child herself: Is she outgoing or shy? Is she passionate about sports, books, art, animals? Does she have a lot of friends in one place or the other? Does she make friends easily? Is change easy or hard for her? In whom does she confide? Such information would certainly be relevant in determining which parent would be the better “fit” for this particular child. In addition, an in camera meeting affords the child a chance to meet and ask questions of the judge who will be deciding her fate, which seems only fair.
The child may also disclose crucial factual information about the conduct of one or the other parent, for example, that her mother beats her or that her father leaves her alone, unsupervised for extended periods of time.
Due process concerns are not implicated in the child’s opinions or answers to the judge’s “impression” questions, which are not subject to proof one way or the other. However, factual disclosures about one or both parents, which will likely influence the custodial determination and which are subject to proof, should clearly be disclosed, in some manner, to the parents or their attorneys so that they may be afforded the opportunity to gather and produce evidence to refute or counter or explain the child’s statements.
Factual information disclosed by a child with respect to a parent’s conduct is routinely dealt with in Family Court Act article 10 child-protective proceedings, in which children normally are required to testify directly and under cross-examination (see e.g. Matter of Christina F., 74 NY2d 532 [1989]; Matter of Leslie C., 224 AD2d 947 [4th Dept 1996]). The child’s testimony may be the primary — or the only — evidence of parental abuse or neglect (see e.g. Matter of Leslie C., supra), and the child is, of necessity, placed in an adversarial position vis-á-vis her parents. There is no question that the father or mother in an article 10 case, whose constitutionally protected parental rights are on the line, has a due process right to know and attempt to meet the evidence against him or her (see e.g. Matter of Justin CC. [Tina CC.], 77 AD3d 207 [3d Dept 2010]; Matter of Annemarie R., 37 AD3d 723 [2d Dept 2007]; Matter of Andrew B.-L., 43 AD3d 1046 [2d Dept 2007]; Matter of Q.-L. H., 27 AD3d 738 [2d Dept 2006]).
*803 In order to cushion the fear or reluctance or trauma associated with testifying against a parent, courts in article 10 cases have frequently conducted what have been dubbed “modified Lincoln hearings,” in which the children are questioned and cross-examined by the attorneys for the parents but the parents themselves are not present during the questioning (see e.g. Matter of Christina F., 74 NY2d 532, 537 [1989]; Matter of Arlenys B. [Aneudes B.], 70 AD3d 598, 599 [1st Dept 2010]; Matter of Q.-L. H., 27 AD3d 738, 739 [2006]; Matter of Hadja B., 302 AD2d 226 [1st Dept 2003]; Matter of Randy A., 248 AD2d 838, 840 [3d Dept 1998]; Matter of Leslie C., 224 AD2d 947 [1996]).[4]
A parent in a Family Court Act article 6 custody case has a no less significant due process right to know and meet the factual evidence that will determine his or her constitutionally protected right to the care and custody of his or her child. A child’s relevant, factual disclosures in an article 6 in camera interview, like a child’s factual testimony in an article 10 proceeding, will most certainly influence the ultimate decision as to which parent is awarded legal custody of the child. Hence, it is imperative that parents in custodial conflicts be afforded the same due process protections that parents in article 10 proceedings have to challenge the child’s factual assertions in some manner through the normal adversary process. Permitting such challenge will also help assure that the court’s decision is based upon evidence that is as complete and as reliable as possible.
In permitting disclosure of a child’s in camera statements, the court must be mindful of whether such disclosure poses a risk of reprisal or other conduct by a parent that would be injurious to the child’s physical or emotional well being and the court should implement whatever protective remedies may be appropriate to guard against such risk.
In the present matter, the children’s statements to me during the course of the in camera interviews for the most part were factual allegations of specific conduct by the parents — primarily the father — rather than expressions of the children’s preferences or opinions about their parents’ relative parenting abilities. Those statements, which are akin to testimony given in an article 10 proceeding, were made in the absence, not only of the parties, but their attorneys as well. My decision to transfer *804 temporary custody of Nisaa and Hakim was based in large part on the statements the children made to me during their in camera interviews. Those statements, many of which are adverse to the father, are clearly relevant to a final custody decision. Unless the father and/or his counsel are apprised of those factual allegations, the father will be deprived of the opportunity to marshal and present evidence to refute or explain those charges.
While there may be several methods of meeting Lincoln’s dual goals (see e.g. Barton v Kondrat, Fam Ct, Kangs County, Aug. 24, 2007, Hepner, J., index No. V-19700-02/06F [transcripts distributed to counsel for the parties and the child with specific limiting conditions as to their use and dissemination]), I will endeavor to satisfy those concerns in this case as follows: the court will review the transcripts of the in camera interviews of the children and redact all “opinion” or “preference” statements. Upon request, copies of the redacted transcripts shall be made available to the attorneys for the mother and the father. The children’s attorney, who was present during the in camera interviews, shall be provided unredacted copies of the transcripts. The attorneys for the parents may review the redacted transcripts with their clients in their offices, but may not make additional copies or allow their clients to take the copies out of the attorney’s office.
No subpoena for the children to testify shall issue except by the court, and any request for a subpoena shall be made by motion on notice to other counsel, including the children’s attorney. Whether and under what conditions the children may be called to testify as well as the permissible scope of any such testimony shall be decided by the court.

. On February 8, 2010, the mother withdrew her custody petition as it relates to the oldest child, Wali S., born on xx/xx/1995, based upon Wall’s consistently stated wish to continue to reside with his father.

. The Court did not suggest that in camera interviews were required or necessary in all custody cases. That decision is left to the discretion of the trial courts (see e.g. Matter of Thompson v Yu-Thompson, 41 AD3d 487, 488 [2d Dept 2007]; Matter of Thomas v Osborne, 51 AD3d 1064, 1068 [3d Dept 2008]; Matter of Hildenbrand v Hildenbrand, 37 AD3d 981, 983 [3d Dept 2007]; Matter of Perez v Montanez, 31 AD3d 565, 566 [2d Dept 2006]).

. Some commentators have questioned the wisdom and value of in camera interviews (see e.g. Cynthia Starnes, Swords in the Hands of Babes: Rethinking Custody Interviews after Troxel, 2003 Wis L Rev 115 [2003] [which argues that in camera interviews are problematic in at least three respects: (1) they may be traumatic to the child and draw her further into a distressing custody dispute; (2) they may elicit inaccurate information through questioning by judges who are unschooled in child development principles or untrained in interviewing techniques; and (3) they may burden a child with a sense that she is responsible for the ultimate custodial decision]).

. See also Family Court Act § 343.1 (2) and (4) and GPL 65.10, which specifically permit “vulnerable” child witnesses in juvenile delinquency proceedings to testify via live, two-way, closed circuit TV